832 A.2d 295

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. SHERMAN ARTWELL, A/K/A TIMOTHY
HARRIS, DEFENDANT–APPELLANT.

Argued March 18, 2003—Decided July 2, 2003.

528

*Shepard K. Kays,* Designated Counsel, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Robin A. Hamett,* Assistant Prosecutor, argued the cause for respondent (*Vincent P. Sarubbi,* Camden County Prosecutor, attorney).

The opinion of the Court was delivered by

ZAZZALI, J.

In this appeal we must determine whether the trial court's requirement that a defense witness appear before the jury in restraints and prison garb violates a defendant's right to a fair trial. This matter arose during defendant's prosecution for certain drug offenses. Over defendant's objection, the trial court required one of defendant's witnesses to testify before the jury in handcuffs and prison garb. Defendant appealed the conviction and sentence and the Appellate Division affirmed. We conclude that the trial court's failure to state on the record its reasons for requiring defendant's witness to appear in restraints was reversible error. Going forward, we also require that defense witnesses no longer appear at trial in prison garb because that practice advances no essential state interest. Accordingly, we reverse and remand for a new trial.

## I

Defendant was arrested and charged with third-degree possession of cocaine, third-degree possession of cocaine with intent to distribute, and third-degree possession of cocaine with intent to distribute within 1000 feet of a school zone. Defendant and the State gave conflicting accounts at trial regarding the circumstances of defendant's arrest.

The State presented the testimony of two undercover narcotics detectives, Officers Shane Sampson and Joseph Williams, both of whom were working surveillance from an unmarked car on the night of defendant's arrest. At approximately 10:00 p.m., while parked on the corner of Fillmore Street and Ferry Avenue, a high-crime area of Camden, Sampson and Williams observed defendant standing by himself in a well-lit area, roughly forty or fifty feet away. Over a period of approximately twenty minutes, the officers watched as four different individuals approached defendant and gave him money in exchange for a small plastic bag. After witnessing the fourth such transaction, the officers exited their vehicle and approached defendant, identifying themselves as Camden police officers. Defendant did not say anything in response and ran away. While in pursuit, Sampson saw defendant reach into his pocket and discard a clear plastic bag. Sampson stopped to retrieve the bag, and Williams continued to pursue defendant, apprehending him after a short chase. The bag contained twenty-four smaller plastic bags of a white, powdery substance that tested positive for cocaine.

Defendant's account differed significantly from the officers' version of events. Defendant indicated that he began the night at the house of his fiancée, Zoranda Paulson. At approximately 8:30 p.m., Paulson's sister Vanessa and Vanessa's boyfriend, Herbert Boone, joined the couple at Zoranda's house. When Boone announced that he was leaving, defendant asked him for a ride so that he could meet an acquaintance, Leonard Howard, to discuss potential roofing work. Boone dropped defendant off at the corner of Sixth Street and Ferry Avenue where defendant com-

menced to speak with two acquaintances, Darla Warren and Michael Irvin. Boone then drove away, while defendant remained at the corner and talked with Warren. Defendant testified that "all of a sudden," "out of the corner of [his] eye," he saw someone approaching rapidly. When he looked more closely, defendant noticed two men, one of whom had a gun. Defendant began to run because he thought the men were "stickup boys" who would accost him and take his money. Defendant slipped while running and the two men seized him, beat him, and restrained him with handcuffs. The men then demanded to know "where the drugs at?" Defendant identified Officer Sampson as one of the two men who arrested him.

Defendant testified on his own behalf. He also relied on the testimony of several other corroborating witnesses, including Boone. Prior to presenting his case, defense counsel informed the trial court outside the hearing of the jury that Boone had been arrested on "new charges" and was presently incarcerated. Although defense counsel did not disclose the nature of those charges before the trial court, counsel for defendant indicated at oral argument before this Court that Boone was in custody for failure to pay child support. Characterizing Boone as a "critical witness," defendant asserted that Boone's appearance at trial in both handcuffs and prison garb would prejudice defendant. Accordingly, defendant requested that the court provide street clothing to Boone to wear during his testimony. The trial court denied that request, noting that reported decisions concerning prison garb all pertained to defendants and not to their witnesses. In addition, the trial court ordered that Boone testify in handcuffs because "[t]here is no requirement that he testify without them." The trial court did not offer any other justification for its decision.

Despite its refusal to accommodate defendant's request that Boone appear unrestrained and in street clothing, the trial court provided the jury with the following cautionary instruction prior to Boone's testimony:

Ladies and gentlemen, you will see that this witness is in custody, and I just want to inform you the reason that he's in custody isn't because he has been convicted of anything. He is in custody simply because he was not able to post the bail. So he has the presumption of innocence as he testifies before you.

Boone, wearing both handcuffs and prison garb, testified that he and defendant were casual "associates," and that he only knew defendant because his girlfriend Vanessa was the sister of defendant's fiancée, Zoranda Paulson. Boone further stated that on the night defendant was arrested, he went to Zoranda's house, picked up some VCR tapes, and left with Vanessa and defendant after a few minutes. Boone dropped defendant off at Sixth Street and Ferry Avenue, where Boone saw Warren, Irvin, and Thomas Biddle, another acquaintance. Boone stated that he did not see anything that happened after he left defendant on the corner.

The jury convicted defendant of third-degree possession of cocaine, *N.J.S.A.* 2C:35–10a(1), and third-degree possession of cocaine with intent to distribute, *N.J.S.A.* 2C:35–5a(1). The trial court sentenced defendant to an extended term of seven years, with three years of parole ineligibility. *N.J.S.A.* 2C:43–6f. Defendant appealed the conviction and sentence, arguing in part that the trial court erred when it required Boone to testify in handcuffs and prison garb. Defendant asserted that the trial court's decision deprived him of his right to a fair trial. The Appellate Division held that absent a showing on the record of a necessity for restraints, the trial court erred by requiring Boone to testify in restraints and prison garb. However, the panel upheld defendant's conviction, concluding that Boone's testimony was "peripheral and any prejudice resulting from his testimony while in prison garb and restrained was harmless."

We granted certification. 174 *N.J.* 364, 807 *A.*2d 196 (2002).

## II

Both the state and federal constitutions guarantee defendants the right to a fair trial before an impartial jury. *State v. Zhu,* 165 *N.J.* 544, 553, 761 *A.*2d 523, 528 (2000) (citing *U.S. Const.* amend. V, VI, and XIV; *N.J. Const.* art. I, ¶ 10). The fair trial

right entitles a criminal defendant " 'to have his [or her] guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial.' " *Ibid.* (quoting *Taylor v. Kentucky,* 436 *U.S.* 478, 485, 98 *S.Ct.* 1930, 1934, 56 *L.Ed.*2d 468, 475 (1978)). Accordingly, the right to a fair trial requires that trial courts allow inherently prejudicial practices "only where justified by an essential state interest specific to each trial." *Holbrook v. Flynn,* 475 *U.S.* 560, 568–69, 106 *S.Ct.* 1340, 1345–46, 89 *L.Ed.*2d 525, 534 (1986). A courtroom arrangement is "inherently prejudicial" when " 'an unacceptable risk is presented of impermissible factors coming into play.' " *Id.* at 570, 106 *S.Ct.* at 1346–47, 89 *L.Ed.*2d at 535 (quoting *Estelle v. Williams,* 425 *U.S.* 501, 505, 96 *S.Ct.* 1691, 1693, 48 *L.Ed.*2d 126, 131 (1976)).

Consistent with the right to a fair trial, a trial court may not require a defendant to appear before the jury in restraints absent compelling reasons. *State v. Damon,* 286 *N.J.Super.* 492, 498–99, 669 *A.*2d 860, 863–64 (App.Div.1996) (citing *Illinois v. Allen,* 397 *U.S.* 337, 344, 90 *S.Ct.* 1057, 1061, 25 *L.Ed.*2d 353, 359 (1970)); *State v. Roberts,* 86 *N.J.Super.* 159, 162–63, 206 *A.*2d 200, 202–03 (App.Div.1965). We disfavor placing physical restraints on a defendant at trial because the jury is likely to consider such a defendant " 'as being in the opinion of the judge a dangerous man, and one not to be trusted, even under the surveillance of officers.' " *Kennedy v. Cardwell,* 487 *F.*2d 101, 106 (6th Cir.1973) (quoting *State v. Kring,* 64 *Mo.* 591, 593 (1877)), *cert. denied,* 416 *U.S.* 959, 94 *S.Ct.* 1976, 40 *L.Ed.*2d 310 (1974). Similarly, the fair trial right precludes the State from requiring that a defendant appear at trial in distinctive prison garb.[1] *State v. Carrion–*

---

[1] Distinctive prison garb is clothing that allows the jury to "visibly identify," *Woods v. Thieret,* 5 *F.*3d 244, 249 n. 9 (7th Cir.1993), the wearer as a prisoner, such as a one-piece jumpsuit, "detention greens," *State v. Gertrude,* 309 *N.J.Super.* 354, 356, 707 *A.*2d 178, 179 (App.Div.1998), or any clothing with markings identifying it as a correctional uniform.

*Collazo*, 221 *N.J.Super.* 103, 112, 534 *A.*2d 21, 25–26 (App.Div. 1987) (citing *Estelle, supra,* 425 *U.S.* at 504–05, 96 *S.Ct.* at 1693, 48 *L.Ed.*2d at 130–31), *certif. denied,* 110 *N.J.* 171, 540 *A.*2d 171 (1988). Allowing defendants to appear in prison garb is improper because it " 'may affect a juror's judgment,' 'furthers no essential state policy' and 'operates usually against only those who cannot post bail prior to trial.' " *Carrion–Collazo, supra,* 221 *N.J.Super.* at 109, 534 *A.*2d at 24 (quoting *Estelle, supra,* 425 *U.S.* at 505, 96 *S.Ct.* at 1693, 48 *L.Ed.*2d at 131).

This Court has never addressed whether a defendant's fair trial right is implicated when his or her witnesses are ordered to testify in restraints or in prison garb. There is authority that "[c]oncomitant to the defendant's right to appear before the jury without physical restraints is his right to have his witness appear that way also." *Harrell v. Israel,* 672 *F.*2d 632, 635 (7th Cir.1982); *see also Wilson v. McCarthy,* 770 *F.*2d 1482, 1484 (9th Cir.1985); *Kennedy, supra,* 487 *F.*2d at 105 n. 5; *State v. Coursolle,* 255 *Minn.* 384, 97 *N.W.*2d 472, 476 (1959). *But see White v. State,* 105 *Nev.* 121, 771 *P.*2d 152, 153 (1989) (requiring defense witness to appear in prison attire and physical restraints did not deny defendant due process); *State ex rel. McMannis v. Mohn,* 163 *W.Va.* 129, 254 *S.E.*2d 805, 811 (1979) (stating that "[a] criminal defendant has no constitutional right to have his witnesses appear at trial without physical restraints."), *cert. denied,* 464 *U.S.* 831, 104 *S.Ct.* 110, 78 *L.Ed.*2d 112 (1983). Similarly, some courts have suggested that a defendant's right to a fair trial precludes a trial court from requiring that his or her witnesses appear in prison garb. *See State v. Yates,* 174 *Conn.* 16, 381 *A.*2d 536, 537 (1977). *See also United States v. Carter,* 522 *F.*2d 666, 677 (D.C.Cir.1975) (extending due process proscription against requiring defendants to appear in prison garb to "condemn the practice of producing prisoners in court who are dressed in clothes typical of jails or penal institutions, when this circumstance may arguably cause injury to a defendant's case"). *But see McMannis, supra,* 254 *S.E.*2d at 808–09 (noting that *Yates* and *Carter* did not "elevate" defendant's

right to have his witness appear in civilian attire "to a constitutional level").

In *State v. Smith*, the only reported case in this jurisdiction to address the restraint of a defendant's witness, the Appellate Division observed that "[w]hile shackling a defense witness is not the exact equivalent of shackling the defendant, in some circumstances . . . the resulting prejudice can be equally detrimental." 346 *N.J.Super.* 233, 239, 787 *A.*2d 276, 280 (2002). The panel stated that "[a] trial court certainly has discretion to require or allow a defendant or witness to be shackled, but that determination must be made by balancing the need for courtroom security against the potential prejudice of the restraints." *Id.* at 240, 787 *A.*2d at 281. Accordingly, it held that in the absence of a record to justify the trial court's decision or a cautionary instruction to the jury, compelling a defendant's only witness to testify in handcuffs constituted reversible error. Despite the defendant's failure to object, the panel found "the potential prejudice to defendant so great that the trial court, absent a record demonstrating a threat of violence or other exceptional circumstances, should have sua sponte had the restraints removed." *Id.* at 241, 787 *A.*2d at 281.

## III

### A

The appearance of a defense witness in restraints undermines the credibility of the testimony that witness offers on the defendant's behalf. *Harrell, supra,* 672 *F.*2d at 635; *Williams v. State,* 629 *P.*2d 54, 57–58 (Alaska 1981); *State v. Rodriguez,* 146 *Wash.*2d 260, 45 *P.*3d 541, 543 (2002). Even in those instances when the prosecution demonstrates a witness's criminal history to the jury by the entry of a conviction into evidence, that fact does not mitigate the additional harm caused by the sight of defendant's witness in restraints. As one court has noted, the danger lies "not merely in the fact that the jury may suspect that the

witness committed a crime," but in "the inherent psychological impact" that restraints will have on the jury's assessment of credibility. *Williams, supra*, 629 *P*.2d at 57–58. Requiring a witness to testify in shackles also encourages the jury to perceive the defendant as one who must turn to the testimony of a putatively "guilty" individual to help salvage his case. *Commonwealth v. Brown*, 364 *Mass.* 471, 305 *N.E.*2d 830, 834 (1973) (stating that appearance of defense witness in restraints may "further hurt the defendant insofar as the witness is conceived to be associated with him"). Indeed, "[t]he old adage that 'a man is known by the company he keeps' could easily produce an inflammatory situation so far as the jury was concerned as a result of the accused's principal witnesses being handcuffed each day during the trial." *Coursolle, supra*, 97 *N.W.*2d at 476.

Because the appearance of a defense witness in restraints presents a risk of unfair prejudice to a defendant, the trial court may subject a witness to physical restraint only when it "has reason to believe it is necessary to maintain the security of the courtroom." *Harrell, supra*, 672 *F*.2d at 635 (citing *Loux v. United States*, 389 *F*.2d 911, 919 (9th Cir.), *cert. denied*, 393 *U.S.* 867, 89 *S.Ct.* 151, 21 *L.Ed.*2d 135 (1968)). In that instance, the trial court should "hold a hearing, however informal, and state on the record out of the jury's presence [its] reasons for shackling the [witness], whether they are based on evidence from trial, information obtained from criminal records, or statements made by law enforcement officers." *Damon, supra*, 286 *N.J.Super.* at 499, 669 *A.*2d at 863 (citing *Roberts*, 86 *N.J.Super.* at 166–67, 206 *A.*2d at 204–05); *see also Thompson v. State*, 514 *S.W.*2d 275, 278 (Tex. Crim.App.1974); *State v. Simmons*, 26 *Wash.App.* 917, 614 *P.*2d 1316, 1318, *rev. denied*, 94 *Wash.*2d 1018 (1980); *Control, Restraint or Removal of Defendants and Witnesses*, American Bar Association Standards for Criminal Justice 15–3.2c and 3.2d (3d ed.1996). *See Zhu, supra*, 165 *N.J.* at 557, 761 *A.*2d at 530–31 ("To assist in effective appellate review, trial courts must create an appropriate record containing the reasons for enhanced [court-

room] security and the basis for the court's adoption of any such plan."). The trial court should consider, but is not limited to considering, the following:

> (1) the seriousness of the present charge, (2) the person's character, (3) the person's past record, (4) past escapes by the person, (5) attempted escapes by the person, (6) evidence the person is planning an escape, (7) threats of harm to others, (8) threats to cause disturbance, (9) evidence the person is bent upon self-destruction, (10) risk of mob violence, (11) risk of attempted revenge by victim's family, [and] (12) other offenders still at large, . . .

> [McMannis, supra, 254 S.E.2d at 810 n. 7 (quoting A.B.A. Advisory Committee on the Criminal Trial, Standards Relating to Trial by Jury (Approved Draft 1968), at 96 n. 9).]

Finally, the court must "instruct the jury in the clearest and most emphatic terms that it give such restraint no consideration whatever in assessing the proofs and determining guilt." Roberts, supra, 86 N.J.Super. at 168, 206 A.2d at 205.

■ The trial court's decision to require Boone to appear in handcuffs created a risk of unfair prejudice to defendant because it both undermined Boone's credibility and presented defendant as one who associates with individuals of questionable character. As noted, when such a risk is present, a defendant's right to a fair trial requires that the risk be justified by an essential state interest. Holbrook, supra, 475 U.S. at 568–69, 106 S.Ct. at 1345–46, 89 L.Ed.2d at 534. The trial court's failure to create a record of its reasons for ordering the physical restraint of Boone suggests that its decision did not reflect an interest in courtroom security or decorum. The court ordered that Boone appear in handcuffs simply because "[t]here is no requirement that he testify without them." If the record had established a justification for restraints that outweighed the risk of prejudice, the trial court, in a proper exercise of discretion, could have required restraints. Failure to create that record, however, leaves us no choice but to reverse. See Williams, supra, 629 P.2d at 57; Coursolle, supra, 97 N.W.2d at 476–77; State v. Allah Jamaal W., 209 W.Va. 1, 543 S.E.2d 282, 288 (2000); Smith, supra, 346 N.J.Super. at 241, 787 A.2d at 281–82.

## B

Unlike the use of restraints, requiring a witness to testify in prison clothing "further[s] no vital State interest." *State v. Maisonet,* 166 *N.J.* 9, 17, 763 *A.*2d 1254, 1258 (2001) (citation omitted). Instead, that practice only prejudices a defendant both by undermining his or her witness's credibility and suggesting a defendant's guilt by association. *Yates, supra,* 381 *A.*2d at 537; *Rodriguez, supra,* 45 *P.*3d at 544. Accordingly, going forward, a trial court may not require a defendant's witness to appear at trial in prison garb. *See Allah Jamaal W., supra,* 543 *S.E.*2d at 286; *State v. Torres,* 57 *Conn.App.* 614, 749 *A.*2d 1210, 1217, *certif. denied,* 253 *Conn.* 927, 754 *A.*2d 799 (2000); *Mullins v. State,* 766 *So.*2d 1136, 1137 (Fla.App.2000), *rev. denied,* 786 *So.*2d 1187 (Fla.2001); *Control, Restraint or Removal of Defendants and Witnesses, supra,* at 15–3.2b. Although we recognize the administrative inconvenience that rule might impose, the fact that it may be more convenient for prison administrators to allow defense witnesses to remain dressed in prison clothes is not an essential state interest that justifies the practice. *See Holbrook, supra,* 475 *U.S.* at 568–69, 106 *S.Ct.* at 1345–46, 89 *L.Ed.*2d at 534; *Estelle, supra,* 425 *U.S.* at 505, 96 *S.Ct.* at 1693, 48 *L.Ed.*2d at 131. In future cases, a defendant therefore need not make an affirmative request of the trial court that his or her witnesses appear in civilian clothing. Instead, as a general rule the corrections authorities should supply defense witnesses with civilian clothing and those witnesses should enter the courtroom in such attire. We note, however, that when an incarcerated witness is expected to testify on a defendant's behalf that defendant should notify the trial court and the State as soon as practicable, so that those parties may make suitable arrangements.

## IV

The judgment of the Appellate Division is reversed. We vacate defendant's conviction and remand for a new trial.

*For reversal and remandment*—Chief Justice PORITZ and Justices COLEMAN, LONG, VERNIERO, LaVECCHIA, and ZAZZALI—6.

*Opposed*—None.