# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0841-24

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANTHONY M. JACKSON,

     Defendant-Appellant.

_____

Argued April 13, 2026 – Decided April 22, 2026

Before Judges Sabatino and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 11-05-0479.

Kayla E. Rowe, Designated Counsel, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Kayla E. Rowe, on the briefs).

Robert A. Polis II, Assistant Prosecutor, argued the cause for respondent (Jennifer Webb-McRae, Cumberland County Prosecutor, attorney; Robert A. Polis II, of counsel and on the briefs).

Appellant filed a supplemental brief on appellant's behalf.

PER CURIAM

Defendant Anthony Jackson appeals the September 16, 2024 order denying his petition for post-conviction relief ("PCR") without an evidentiary hearing. Defendant was convicted in 2016 by a jury of second-degree sexual assault, N.J.S.A. 2C:14-2(c)(1); second-degree aggravated assault attempting or causing serious bodily injury, N.J.S.A. 2C:12-1(b)(7); two counts of third-degree criminal restraint, N.J.S.A. 2C:13-2(a); fourth-degree criminal trespass, N.J.S.A. 2C:18-3(a); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d). Discerning no error by the PCR court, we affirm.

## I.

We summarize the State's proofs underlying defendant's conviction arising from the 2010 home invasion and assault of D.B., defendant's former paramour, and her adult autistic son, S.P.[1]

Defendant unlawfully entered D.B.'s home via a window in S.P.'s bedroom in the early morning hours of July 27, 2010. Defendant first assaulted

---

[1] We utilize initials to protect the confidentiality of the victims in this case pursuant to Rule 1:38-3(c)(12).

S.P. by punching him and repeatedly striking him in the head with a baseball bat, causing significant injury that left him bleeding and incapacitated on the floor. Defendant next restrained and confined both D.B. and S.P. within D.B.'s bedroom where he "forced D.B. onto her bed, and repeatedly sexually assaulted her over the course of several hours." Defendant next forced D.B. to "help him wash the sheets and their clothing and wipe the house [down] with Lysol."

On the morning following the assault, D.B. called out sick from work, and defendant forced S.P. to stay home. At around 10:00 a.m., Anthony Hall, S.P.'s job coach, came to the door to pick up S.P., but was told that S.P. would not be going with him that day.

Defendant next forced D.B. to withdraw money from an ATM, give it to him, and drop him off at a location somewhere near her home. After dropping defendant off, D.B. and S.P. drove home, locked the doors, and called a close friend and D.B.'s father for assistance. D.B.'s father arrived at her home with Emergency Medical Technicians ("EMTs"), who attended to D.B. and S.P.

Some time later, D.B. and S.P. reported to the emergency room at South Jersey Regional Medical Center where they were treated by Dr. Donato Terrigno, an emergency room physician. S.P. was diagnosed with "a one-and-a-half-inch semicircular laceration to the back of his head and a large lump on

3

his forehead, as well as abrasions and lacerations to his arms, legs, and stomach." The record indicates that D.B. suffered bruises, cuts, and scrapes on her thighs.

Later that same day, U.S. Marshals arrested defendant and transported him to the Vineland Police Headquarters where he was charged with various assault-related offenses. Defendant was subsequently indicted on fourteen counts related to his assault on D.B. and S.P., including first-degree kidnapping, N.J.S.A. 2C:13-1(b)(2); one count of second-degree burglary, N.J.S.A. 2C:18-2(b)(1) and (2); one count of first-degree robbery, N.J.S.A. 2C:15-1(a)(1); two counts of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); two counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(3); three counts of fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d); and three counts of third-degree possession of a weapon for unlawful purpose, N.J.S.A. 2C:39-4(d).

According to the record, defendant and D.B. had been involved in an on-again-off-again relationship since at least 2005, during which time D.B. previously accused defendant of assaulting her on at least one prior occasion. The record also reflects that, years prior to defendant's 2010 assault and charges, D.B. wrote a letter to a different judge presiding over an unrelated 2005 matter

4

involving defendant on July 13, 2005, requesting dismissal of the then-pending charges. In that letter, D.B. stated that her initial statements implicating defendant in assaulting her were made while she was emotionally distressed and exhausted, and that she felt pressured by law enforcement and others to continue the prosecution.[2]

In the months before the trial related to defendant's 2010 assault, defendant moved to admit D.B.'s letter into evidence. Defendant argued that D.B.'s letters constituted "impeachment evidence of [D.B.'s] prior false accusations against [him]," and were necessary to provide the jury with a complete understanding of D.B.'s prior inconsistent statements pursuant to N.J.R.E. 608(b). The court denied the motion to admit D.B.'s letters, concluding that "D.B. had not fully or definitively recanted her original accusations, and that no 'knowingly false' assertions of wrongdoing by her had occurred."

In February 2014, defendant accepted the State's plea offer and pleaded guilty to an "open plea" to a single count of aggravated sexual assault with a recommended sentence of fourteen years. Within weeks, however, defendant

---

[2] The parties litigated the admissibility of several documents authored by D.B. The other materials included an undated letter to the New Jersey Parole Board, an April 10, 2006 certification, and additional correspondence dated April 13, July 20, and October 6, 2006.

A-0841-24

moved to withdraw his plea, arguing he had not fully understood the consequences of the open plea and the possibility that the court would impose a greater sentence than recommended by the prosecutor. The court denied the motion but suspended sentencing "to give [defendant] an opportunity to attend an Avenel evaluation."

On January 28, 2015, defendant appeared before Judge Cristen P. D'Arrigo, J.S.C., who sentenced him to an eighteen-year term of imprisonment—four more years than recommended by the prosecutor—subject to the eighty-five percent parole disqualifier under the No Early Release Act ("NERA"), N.J.S.A. 2C:43-7.2. Defendant appealed and on December 15, 2015, we reversed the denial of defendant's motion to withdraw his guilty plea and remanded the matter to the trial court for further proceedings.[3]

---

[3] In that matter, we held:

> The plea agreement specified that this was an open plea to Count Seven with a cap of fourteen years, but the trial court sentenced defendant to eighteen years with [eighty-five percent] parole disqualifier. Although the judge explained the possible sentence for the offense was as much as twenty years, the record is muddled as to whether the judge properly informed defendant, if he pled guilty, the imposed sentence could exceed the cap stated in the plea agreement. Defendant thereafter sought to withdraw his plea, however, the judge denied

6

On remand, the case proceeded to a jury trial before Judge D'Arrigo, spanning approximately one month. We limit our recitation of the trial testimony to the issues raised by defendant in his PCR petition.

Prior to the start of the trial, the court stated that it would take certain steps to make sure that, even if defendant were to be restrained during trial, the jury would not be able to see him in shackles. Specifically, the court explained that defendant would remain seated whenever the jury entered or exited the courtroom, that counsel and court staff would likewise remain seated so as not to draw attention to defendant, and that the jury would be excused before defendant was permitted to stand or leave the courtroom. The court also indicated that the restraints would be concealed from the jury's view and emphasized that every effort would be made to avoid any prejudice against defendant arising from their use.

The court further addressed defendant's motion to use D.B.'s letters in which she appeared to have recanted or minimized the allegations against

---

the motion without giving sufficient reasons. Therefore, we reverse the denial of defendant's motion to withdraw the guilty plea, and remand to the trial court for further proceedings.

[(Emphasis added).]

A-0841-24

defendant related to the 2005 proceedings. To that end, the court conducted a Rule 104 hearing to determine whether those materials could be admitted as evidence of prior false accusations. Defense counsel argued D.B. previously "recanted her accusations of sexual assault," and that such evidence was critical to impeach her credibility related to the 2010 charges.

The trial court ultimately denied defendant's request, finding that he failed to establish that D.B. made any "knowingly false" accusations. As a result, although the defense was permitted to explore certain aspects of the relationship between defendant and D.B. and cross-examine her on those issues, the court barred defendant from introducing D.B.'s prior letters themselves into evidence or arguing that her earlier accusations were false.

During the trial, defense counsel sought to introduce evidence of defendant's prior criminal restraint conviction to place D.B.'s letters and statements in context (although the court had previously excluded this evidence), and to support the defense theory that defendant would not have harmed her in light of their long-term relationship. Although the State objected and argued such evidence was not relevant, defendant maintained it was necessary to demonstrate the complexity of the parties' relationship.

A-0841-24

The trial court cautioned, both on the record and in defendant's presence, that such evidence would ordinarily be excluded and could not be used to impeach D.B., but determined it could satisfy the "low bar of relevance" if introduced through defendant's own testimony. Defense counsel also confirmed that defendant did not object to the admission of potentially prejudicial information, including references to his drug use.

On August 11, 2016, following the presentation of the evidence, the jury returned a verdict finding defendant guilty of second-degree sexual assault as to D.B.; second-degree aggravated assault for attempting or causing serious bodily injury to S.P.; third-degree aggravated assault for attempting or causing significant bodily injury to D.B.; two counts of third-degree criminal restraint as to D.B. and S.P.; fourth-degree criminal trespass; third-degree possession of a weapon (a baseball bat) for an unlawful purpose; and fourth-degree unlawful possession of a weapon (a baseball bat).

On February 28, 2017, Judge D'Arrigo "sentenced defendant to an extended term of sixteen-years' imprisonment for second-degree sexual assault, plus an eight-year consecutive term on the second-degree aggravated assault of S.P., subject to NERA. Defendant's sentences on the remaining charges were either merged or ordered to run concurrently."

A-0841-24

Defendant appealed the verdict and sentence, asserting various grounds. We affirmed defendant's conviction and sentence. State v. Jackson, A-4141-16 (App. Div. Nov. 26, 2018). Our Supreme Court subsequently denied certification. State v. Jackson, 238 N.J. 73 (2019).

Defendant's PCR Petition

Defendant filed a timely petition for PCR, alleging that plea, trial, and appellate counsel each provided ineffective assistance at various stages of representation. We address defendant's arguments seriatim, including those raised in his self-represented and counseled briefs. In his self-represented brief, defendant raised the following arguments for our consideration:

POINT I

DEFENSE COUNSEL WAS INEFFECTIVE IN FAILING TO REQUEST A JURY INSTRUCTION DEFINING CRIMINAL INTENT REGARDING COUNT FIVE OF THE INDICTMENT (AGGRAVATED ASSAULT).

POINT II

INEFFECTIVE ASSISTANCE OF COUNSEL OF TRIAL AND APPELLATE COUNSELS FOR FAILING TO MOVE TO DISMISS THE SEXUAL ASSAULT COUNTS AT THE LOS[S] OF THE STATE'S CASE, AND FAILING TO RAISE THE ISSUE ON DIRECT APPEAL THAT THE EVIDENCE OF SEXUAL ASSAULT DID NOT MEET THE ELEMENTS OF THE OFFENSE.

A-0841-24

POINT III

THE TRIAL COURT ERRED WHEN IT EXCLUDED RELEVANT EVIDENCE REGRADING THE COMPLAINING WITNESS' PAST FALSE ALLEGATIONS. (PARTIALLY RAISED BELOW).

POINT IV

AN EXPLICIT BIAS EXISTED WHEN THE TRIAL [COURT] FAILED TO RECUSE HIMSELF AFTER A FAMILIAL RELATIONSHIP BETWEEN HIMSELF AND A POTENTIAL WITNESS WAS DEMONSTRATED.

POINT V

WHETHER THE TRIAL COURT'S USE OF FACTS NOT FOUND BY THE JURY TO ESTABLISH THE BASIS FOR ENHANCED SENTENCING, VIOLATED THE HOLDING IN ERLINGER V. UNITED STATES AND STATE V. CARLTON, AND AMOUNTED TO A VIOLATION OF DEFENDANT'S SIXTH AND FOURTEEN AMENDMENT PROTECTIONS.

Additionally, defendant raises the following arguments in his counseled

PCR brief:

POINT I

THE ROOT INEFFECTIVENESS IN THIS CASE WAS THE INEFFECTIVE ASSISTANCE OF THE ATTORNEY ASSIGNED TO THE MOTION TO WITHDRAW THE GUILTY PLEA AND FOR THE FIRST SENTENCING, BECAUSE COUNSEL

11

FAILED TO EXPLAIN WHAT IT MEANT TO PLEAD OPEN.

POINT II

TRIAL COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO INVESTIGATE AND CALL WITNESSES ANTHONY HALL AND DR. TERRIGNO.

POINT III

TRIAL COUNSEL WAS INEFFECTIVE WHEN HE ALLOWED [DEFENDANT] TO BE CHAINED TO THE FLOOR FOR ALL TEN DAYS OF THE SECOND TRIAL AND APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THIS ISSUE ON APPEAL.

POINT IV

TRIAL COUNSEL WAS INEFFECTIVE WHEN HE ACTIVELY PRESENTED EVIDENCE OF [DEFENDANT]'S PRIOR CONVICTIONS TO BE ADMITTED AT TRIAL.

POINT V

TRIAL COUNSEL WAS INEFFECTIVE AT SENTENCING WHEN HE FAILED TO ARGUE AGAINST CONSECUTIVE SENTENCING.

II.

We review the legal conclusions of a PCR court de novo. State v. Harris, 181 N.J. 391, 419 (2004). The de novo standard of review also applies to mixed

questions of fact and law.  Id. at 420.  We may "conduct a de novo review" of the court's "factual findings and legal conclusions" where the PCR court has not conducted an evidentiary hearing.  Id. at 421; see also State v. Lawrence, 463 N.J. Super. 518, 522 (App. Div. 2020).  We owe no special deference to the trial court's factual or legal conclusions and may consider the record anew to determine whether defendant made a prima facie claim that would entitle him to an evidentiary hearing.  State v. Jones, 219 N.J. 298, 311-12 (2014); State v. Porter, 216 N.J. 343, 355 (2013).

When petitioning for PCR, a defendant must establish entitlement to "'PCR by a preponderance of the evidence,'" meaning that it is rooted in a cognizable claim.  State v. Vanness, 474 N.J. Super. 609, 624 (App. Div. 2023) (quoting State v. O'Donnell, 435 N.J. Super. 351, 370 (App. Div. 2014)).  "A PCR petition is cognizable if it is based upon a '[s]ubstantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey.'"  State v. Gideon, 244 N.J. 538, 549 (2021) (alterations in original) (quoting R. 3:22-2(a)).  "The court shall not bar a defendant's claim in a first PCR proceeding if it 'would result in fundamental injustice.'"  State v. Rose, 458 N.J. Super. 610, 625 (App. Div. 2019) (quoting R. 3:22-4(a)(2)).

An evidentiary hearing on a PCR petition is required where a defendant establishes a prima facie case for PCR under the standard established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 686 (1984), and the existing record is inadequate to resolve defendant's claim. Porter, 216 N.J. at 354 (citing R. 3:22-10(b)); see also State v. Preciose, 129 N.J. 451, 462-63 (1992).

Under Strickland, a defendant first must show that his or her attorney's handling of the matter "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688; see also State v. Fritz, 105 N.J. 42, 58 (1987). A defendant also must show there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; see also Fritz, 105 N.J. at 60-61. A failure to satisfy either prong of the Strickland/Fritz standard requires the denial of a PCR petition. Strickland, 466 U.S. at 700; State v. Nash, 212 N.J. 518, 542 (2013); Fritz, 105 N.J. at 52.

III.

Applying these legal principles and based on our thorough review of the record, we reject defendant's arguments and affirm the PCR court's denial of defendant's petition substantially for the reasons stated in the PCR court's

14

thorough decision. We reach this conclusion because, with respect to each of his prior counsel, defendant failed to establish a prima facie claim of ineffective assistance under Strickland, having failed to demonstrate either deficient performance or resulting prejudice. Indeed, several of defendant's arguments were also procedurally barred because they had been previously adjudicated on direct appeal. We further conclude that because defendant did not meet his burden of establishing a prima facie case of ineffective assistance of counsel, no evidentiary hearing was warranted. See Preciose, 129 N.J. at 462-63. We add the following comments to amplify certain aspects of our opinion.

A.

First, we reject the arguments raised in points one through four of defendant's self-represented brief as lacking in merit. Defendant cannot establish trial counsel was ineffective for failing to request a jury instruction on defining criminal intent by virtue of the significant evidence of assault on S.P. who sustained "observable injuries" as noted by the State. Moreover, defendant cannot establish how the alleged failure to advise the jury as to criminal attempt would benefit him or how the jury was confused by the instructions. "In matters of trial strategy, we accord great deference to the decisions of counsel." State v. Biegenwald, 126 N.J. 1, 56 (1991). In failing to undertake this analysis,

15

defendant cannot show that the alleged deficiency was prejudicial under Strickland's second prong. Moreover, as the PCR court noted, based on D.B.'s testimony and evidence presented, the jury had more than sufficient compelling evidence to find defendant guilty of aggravated assault. Accordingly, defendant cannot show a reasonable probability that failing to define criminal intent resulted in any prejudice to him or would have altered the outcome of his case.[4] It is well-settled that "[a] defendant is entitled to a fair trial but not a perfect one," and counsel need not raise every argument during the course of representation. State v. Arrington, 480 N.J. Super. 428, 453 (App. Div. 2024), certif. granted, 260 N.J. 208 (2025) (citing State v. R.B., 183 N.J. 308, 333-34 (2005) (quoting Lutwak v. U.S., 344 U.S. 604, 619 (1953))).

Additionally, we are satisfied that the remaining arguments raised in points two through four of defendant's self-represented brief are equally unavailing and unmeritorious. Defendant cannot establish that trial and appellate counsel were ineffective for failing to move to dismiss the sexual assault count given the significant testimony of assault presented by the victim,

---

[4] "A person is guilty of aggravated assault if the person . . . [a]ttempts to cause serious bodily injury to another, or causes injury purposely or knowingly or under the circumstances manifesting extreme indifference to the value of human life recklessly causes such injury." N.J.S.A. 2C:12-1(b)(1).

which the jury clearly found persuasive. In any case, this argument is procedurally barred, having been previously raised and rejected on direct appeal under Rule 3:22-5.[5]

Additionally, defendant's claim that trial counsel was ineffective for failing to assert bias based on the trial judge's supposed familial relationship—namely, the judge's wife was the niece of the emergency room physician who treated D.B. and S.P.—does not amount to actual bias or ineffective assistance of trial counsel. Relying on State v. Connolly, 120 N.J. Super. 511 (App. Div. 1972), defendant argues that "[e]ven if an actual conflict did not exist, the mere appearance of impropriety existed enough for the judge to have recused himself" in his case. We disagree.

In Connolly, the trial judge's son was employed as an assistant prosecutor in the same prosecutor's office handling the defendant's case, and we concluded that the judge should have recused himself under Rule 1:12-1(b) because his son was "at least, an office associate of the attorney who tried the case for the

---

[5] A prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to this rule or prior to the adoption thereof, or in any appeal taken from such proceedings. R. 3:22-5.

prosecutor," although reversal was unwarranted absent any showing of prejudice. 120 N.J. Super. at 515.

Connolly, however, is materially distinguishable as the alleged relationship here is far more attenuated. The judge's wife was allegedly the niece of the emergency room physician who treated the victims, but who did not testify at trial, rendering any potential conflict too remote to require recusal.

Importantly, we also previously rejected this issue on direct appeal, concluding that this contention was "frivolous" as the physician was not a witness at trial, and "no disqualifying conflict of interest was objectively present." Jackson, slip op. at 30 (citing DeNike v. Cupo, 196 N.J. 502, 517 (2008)). Moreover, trial counsel's performance can hardly be considered deficient if he raised this issue and the court disagreed with him.

B.

We now turn to the claims discussed in defendant's counseled brief. As a preliminary matter, we note that most of defendant's assertions are unaccompanied by any affidavits or certifications, and thus amount to mere bald, vague, and conclusory statements, which are insufficient to sustain his claims. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). This is most evident with defendant's claims that trial counsel was ineffective for failing to

A-0841-24

investigate and call witnesses Anthony Hall and Dr. Terrigno and for allowing defendant to be tethered to the floor during trial.

In each instance, defendant merely raises claims against counsel without providing certifications or affidavits establishing what each witness would have said, how their testimony would have aided in his defense, or that it would have yielded a different outcome at trial, as required to satisfy Strickland's second prong.

Additionally, defendant's claim that trial counsel was ineffective when he "allowed [him] to be chained to the floor for all ten days of the second trial and appellate counsel was ineffective for failing to raise this issue on appeal" suffers from the same malady. A trial court "may not require a defendant to appear before the jury in restraints absent compelling reasons." State v. Artwell, 177 N.J. 526, 534 (2003). However, as noted by the State, defendant was not tethered during the entirety of the trial proceedings, and counsel addressed this issue with the court prior to trial. The record shows that counsel sat in the jury box to ensure that defendant's leg restraints were not visible to the jury. Importantly, defendant does not proffer any evidence to support his contention that any juror observed his being tethered to the floor during trial. Again, absent any certifications or affidavits from jurors supporting defendant's assertions, he

cannot overcome the presumption that counsel's conduct "'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Similarly, we conclude there is no basis to find appellate counsel's representation deficient for failing to raise this issue on direct appeal absent any evidence that members of the jury observed defendant tethered to the floor by his feet. Counsel is not required to advance unmeritorious arguments. See State v. Gaither, 396 N.J. Super. 508, 516 (App. Div. 2007).

As to defendant's claims against plea counsel, defendant's assertions also suffer the same deficiencies. Defendant maintains plea counsel failed to adequately advise him that, if he withdrew his guilty plea, the State would not necessarily renew the same plea offer and that the imposed sentence could exceed the cap stated in the plea agreement. However, this argument is belied by the record, which shows that defendant was expressly advised during the plea colloquy that his plea was "open" and that he could receive a maximum sentence. As the PCR court properly found: "[D]uring the first plea hearing, the [c]ourt questioned [defendant] regarding whether he understood what an open plea meant, to which [he] answered affirmatively." Thus, this argument is unavailing.

A-0841-24

Defendant also failed to establish trial counsel provided ineffective assistance with respect to the imposition of consecutive sentences.  Here, the PCR court also correctly found no meaningful deviation from the factors set forth in State v. Yarbough, 100 N.J. 627, 643-44 (1985), noting that the sentencing court considered the totality of the circumstances, including that the offenses involved two separate victims and defendant's prior conduct with the same victim.  See State v. Torres, 246 N.J. 246, 272 (2021).  Moreover, to the extent defendant directly challenges the propriety of the consecutive sentences themselves, that claim was previously decided on direct appeal and is thus procedurally barred.  R. 3:22-5.

## C.

Lastly, we address defendant's argument that the court's use of facts not found by the jury to support his extended-term sentence as a persistent offender pursuant to N.J.S.A. 2C:44-3(a) violated Erlinger v. United States, 602 U.S. 821 (2024), and State v. Carlton, 269 N.J. 629 (2026).[6]  Defendant posits that his

---

[6]  N.J.S.A. 2C:44-3(a) provides that a court may sentence a defendant to an extended term of imprisonment as a persistent offender if the defendant "has been previously convicted on at least two separate occasions of two crimes, committed at different times, when [the defendant] was at least 18 years of age, if the latest in time of these crimes or the date of the defendant's last release from confinement, whichever is later, is within 10 years of the date of the crime for which the defendant is being sentenced."

A-0841-24

constitutional rights were violated because his eligibility for the extended term was determined by the sentencing court rather than a jury.

In Erlinger, the Supreme Court of the United States held that a defendant is entitled under the Fifth and Sixth Amendments to have a jury unanimously determine, beyond a reasonable doubt, whether the defendant's past offenses were "committed on occasions different from one another" under the federal Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). Erlinger, 602 U.S. at 835. Applying principles first announced in Apprendi v. New Jersey, 530 U.S. 466 (2000), the Erlinger majority reiterated "there is no doubt what the Constitution requires in these circumstances: Virtually 'any fact' that 'increase[s] the prescribed range of penalties to which a criminal defendant is exposed' must be resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty plea)." Erlinger, 602 U.S. at 834 (alteration in original) (quoting Apprendi, 530 U.S. at 490).

Erlinger therefore abrogated New Jersey's persistent offender statute to the extent that N.J.S.A. 2C:44-3(a), as presently drafted, provides that certain predicate facts are to be found by a court rather than a jury. In interpreting Erlinger, however, our Supreme Court recently held in Carlton that "errors in failing to submit sentencing factors or elements to a jury, as in Apprendi and its

22

progeny, are presumptively subject to harmless error analysis, not automatic reversal." 262 N.J. at 643. Our Court's harmless constitutional error doctrine applies to Erlinger violations provided that "the relevant facts are undisputed, the sentencing court's reasoning fully articulated, and the record demonstrates, beyond any reasonable doubt, the sole conclusion a jury could have reached had Erlinger been in place at the time of sentencing." Id. at 644.

Here, as in Carlton, the predicate facts necessary to support defendant's persistent offender extended term are undisputed. We are satisfied there is no merit to defendant's belated contention, raised during oral argument for the first time, that his conviction by way of a prior guilty plea to an unrelated assault charge should be disregarded based on the victim's subsequent attempt to recant her statements. We have no doubt that defendant's plea to those charges stand as a prior conviction, which was appropriately considered by the sentencing court for purposes of extended term eligibility. In fact, defendant did not dispute his prior convictions or the timing of those convictions, all of which are predicate facts for purposes of N.J.S.A. 2C:44-3(a).

Moreover, Carlton limited its holding to pipeline cases, that is, "all cases pending on direct appeal or not yet final." Carlton, 269 N.J. at 638 n.3. Unlike in Carlton, defendant's conviction and sentence became final years before

23

<u>Erlinger</u> and <u>Carlton</u> were decided. Applying the <u>Carlton</u> harmless constitutional error rule, we conclude that the State has established beyond any reasonable doubt that defendant's prior convictions made him eligible for an extended term, and that the sole conclusion a jury could have reached is that defendant is eligible to be sentenced as a persistent offender as defined in N.J.S.A. 2C:44-3(a). Accordingly, as in <u>Carlton</u>, the <u>Erlinger</u> violation in this case is at best harmless error, if <u>Erlinger</u> were even applicable.

In sum, we agree defendant failed to demonstrate the representation provided by his plea, trial, and appellate counsel was deficient or substandard, or that but for any of the alleged errors, the result of his conviction and sentence would have been different. <u>Strickland</u>, 466 U.S. at 694.

To the extent we have not directly addressed any of defendant's arguments, it is because we have found they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

24

A-0841-24