969 A.2d 1052

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. PAUL J. KUCHERA, SR., DEFENDANT–APPELLANT.

Argued November 3, 2008—Decided March 17, 2009.

483

484

*Robert A. Seelenfreund,* Assistant Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Robert E. Bonpietro,* Deputy Attorney General, argued the cause for respondent (*Anne Milgram,* Attorney General of New Jersey, attorney).

Justice RIVERA–SOTO delivered the opinion of the Court.

In *State v. Artwell,* 177 *N.J.* 526, 832 *A.*2d 295 (2003), this Court considered the related questions of whether witnesses tendered by

the defense in a criminal case could be required to appear either in restraints or in prison garb. In respect of the former, this Court determined that "[b]ecause the appearance of a defense witness in restraints presents a risk of unfair prejudice to a defendant, the trial court may subject a witness to physical restraint only when it has reason to believe it is necessary to maintain the security of the courtroom." *Id.* at 537, 832 *A*.2d 295 (citation and internal quotation marks omitted). In respect of the latter, the Court ruled that, prospectively, "a trial court may not require a defendant's witness to appear at trial in prison garb." *Id.* at 539, 832 *A*.2d 295 (citations omitted).

This appeal presents *Artwell's* doppelganger: whether the principles espoused in *Artwell* apply to prosecution, as well as defense, witnesses. On the question of whether prosecution witnesses should be allowed to testify in restraints, we conclude, consistent with *Artwell*, that the paramount concern is the security of the courtroom, an issue as to which the proponent of the witness is irrelevant and a matter rightly entrusted to the sound discretion of the trial judge. On the question of whether prosecution witnesses should be allowed to testify in prison garb, however, we conclude that the reasons that animate our decision in *Artwell*—that is, that the wearing of prison garb may tend to undermine the credibility of the witness—may have no true relevance to prosecution witnesses and, hence, whether a prosecution witness testifies in prison garb likely does not affect whether the trial as a whole is fair. That said, we nevertheless exercise our supervisory powers to require that, as a matter of course and unless otherwise affirmatively permitted by the trial court in the exercise of its discretion, witnesses in criminal cases—both for the prosecution and for the defense—should not testify in prison garb.

## I.

The relevant facts are readily stated. The wife of defendant Paul J. Kuchera, Sr. and her ex-husband had an acrimonious parting; they continued to deal with each other, however, because

of continuing financial obligations between the former spouses and because of their daughter, defendant's step-daughter. On December 29–30, 1999, after a particularly contentious Christmas holiday among defendant's wife, her ex-husband and her daughter/defendant's step-daughter, defendant and a co-worker, Daniel F. Kettle, agreed that, in exchange for $1,000, Kettle would "rough up" the ex-husband and "make him look black and blue." They also agreed that Kettle could retain the proceeds of what he could steal from the ex-husband's home during the assault. Defendant, however, insisted that the ex-husband was not to be killed, as defendant "needed the money that he was receiving from" the ex-husband. According to Kettle, defendant lent Kettle a gun to "scare" the ex-husband, and provided to Kettle a hand-drawn map leading to the ex-husband's home. They planned the assault and robbery for the next day, New Year's Eve, so that defendant would have an alibi.

At approximately 7:30 p.m. on December 31, 1999, Kettle appeared at the ex-husband's home; present at the home were the ex-husband, his girlfriend, and the girlfriend's minor daughter. Kettle, dressed in black and wearing a ski mask, forced his way into the home, assaulted the ex-husband, and threatened his girlfriend; in the meantime, the girlfriend's daughter hid in the garage and called the police on her cell phone. After binding the ex-husband and his girlfriend, Kettle agreed to free them in exchange for $5,000 in cash. The ex-husband explained that they would have to go to an automatic teller machine to retrieve that much cash. While Kettle led the ex-husband out of the house, police officers—who had been summoned by the girlfriend's daughter and who were lying in wait on the porch—grabbed and subdued both Kettle and the ex-husband. Once the melee cleared, Kettle was arrested and he confessed later that evening. The next day, January 1, 2000, defendant was arrested.

The Burlington County grand jury returned a fourteen-count indictment charging defendant and Kettle with second-degree conspiracy, in violation of *N.J.S.A.* 2C:5–2 (count one); second-

degree burglary, in violation of *N.J.S.A.* 2C:18–2(a)(1) (count two); first-degree robbery, in violation of *N.J.S.A.* 2C:15–1(a)(1) (count three); two counts of first-degree kidnapping, in violation of *N.J.S.A.* 2C:13–1(b)(2) (counts four and nine); second-degree aggravated assault, in violation of *N.J.S.A.* 2C:12–1(b)(1) (count five); third-degree aggravated assault, in violation of *N.J.S.A.* 2C:12–1(b)(2) (count six); two counts of fourth-degree aggravated assault, in violation of *N.J.S.A.* 2C:12–1(b)(4) (counts seven and ten); third-degree terroristic threats (threat to kill), in violation of *N.J.S.A.* 2C:12–3(b) (counts eight and eleven); second-degree possession of a weapon for an unlawful purpose, in violation of *N.J.S.A.* 2C:39–4(a) (count twelve), third-degree unlawful possession of a weapon, in violation of *N.J.S.A.* 2C:39–5(b) (count thirteen); and second-degree possession of a firearm by convicted persons, in violation of *N.J.S.A.* 2C:39–7(b) (count fourteen).

Kettle pled guilty to nine of the original fourteen counts in exchange for his cooperation against defendant.[1] He was sentenced to seventeen years' imprisonment, subject in part to the provisions of the No Early Release Act (NERA), *N.J.S.A.* 2C:43–7.2, which required that he serve 85% of thirteen of those years prior to becoming eligible for parole.

The overwhelming majority of the case against defendant consisted of Kettle's testimony; other than the fact that Kettle and defendant worked together, there was precious little to corroborate Kettle's testimony or to join the two together in a common plan. The jury nevertheless credited much of Kettle's testimony, and defendant was convicted of one count of second-degree conspiracy, two counts of second-degree kidnapping as a lesser-included offense of first-degree, and two counts of second-degree aggravated assault; he was acquitted of all other charges. Defen-

---

[1] Kettle pled guilty to second-degree burglary, first-degree robbery, two counts of first-degree kidnapping, second-degree aggravated assault, two counts of fourth-degree aggravated assault, second-degree possession of a weapon for an unlawful purpose, and third-degree possession of a weapon for an unlawful purpose; the remaining five counts of the indictment were dismissed as to him.

dant appealed and, in an unpublished opinion, the Appellate Division reversed those convictions and remanded the case for a new trial.

At the retrial, after Kettle's counsel testified to the terms of Kettle's plea agreement. Kettle was scheduled to testify. The trial court informed the jury that a recess was necessary because it "need[ed] to give the court staff an opportunity to move Mr. Kettle around[,]" noting that "it's pretty clear ... he is coming from state prison. That is no big surprise I am sure." Once the jury was excused, the following exchange occurred:

> THE COURT: Why don't we put Mr. Kettle in the jury box for a second. I want to ask the officers who brought Mr. Kettle, I'd like him—is he cuffed and shackled by his feet as well?
>
> OFFICER: Yes.
>
> THE COURT: I would like all of those to be removed unless you have some security issues with respect to those things?
>
> OFFICER: My only thing, Judge, is that I don't mind taking off both. Is it necessary to take off his leg [shackles]?
>
> THE COURT: It's not necessary. That is why I said does that create a security issue.
>
> OFFICER: Our policy is to keep everything on. However, if you want something off—
>
> THE COURT: I certainly want his hands uncuffed. Counsel, why don't we have Mr. Kettle up here and then his leg shackles will be less obvious to the jury.
>
> [THE PROSECUTOR]: That's fine, Judge. He will not need to step down. The most we might need is at different times pictures.
>
> THE COURT: Do you feel the need to be by him or anywhere else in the courtroom?
>
> OFFICER: If it's okay with you, we just want to cover the exits.
>
> THE COURT: That would be fine.

Defendant did not interpose any objection—at any time—to that procedure.[2] Once the jury returned, the first area of inquiry by the prosecution was as follows:

> Q. Mr. Kettle, good morning, sir. Before we go into all the background and talking about what causes you to be here today, let me start with right this minute. As you are here in this courtroom today, do you want to be here, sir?

---

[2] Moreover, defendant never requested that the jury be instructed in respect of Kettle's prison clothing or, assuming they were observed, his leg shackles.

A. No.

Q. Do you have some concerns about being here, sir?

A. Yes, I do. I fear for my life. I'm an incarcerated prisoner and I'm testifying against someone. And that makes me a snitch. And therefore puts my life in jeopardy in prison.

Q. We will go into all of the details about your guilty plea, but are you currently serving a sentence?

A. Yes.

Q. On this case?

A. Yes.

Q. What institution are you in right now Mr. Kettle?

. . . .

A. I'm in Northern State Prison.

Again, defendant interposed no objection to this line of questioning. On the contrary, he embraced the notion that Kettle, as a convicted, incarcerated felon, was not credible. For that reason, defendant's first area of cross-examination focused on Kettle's incarceration in the State penal system in support of the theory that the prospect of a reduced sentence would serve as a powerful motive to lie:

Q. Mr. Kettle, would you agree with me that the Northern State Prison or any prison is not a place where you want to be?

. . . .

A. Nobody does.

Q. Nobody does. And, in fact, if you can get out earlier th[a]n you know you are scheduled to get out, you'd like to be able to do that, wouldn't you?

A. Would I do it? Or would anyone do it?

Q. Anyone.

A. I'm sure they would.

Q. And you would be one of the ["]they["]. I mean, if you can get out earlier th[a]n you know that you are scheduled to get out, you would take advantage of an opportunity to do that, wouldn't you?

A. I possibly would.

At the conclusion of the retrial, defendant was again convicted, this time of one count of second-degree conspiracy, two counts of criminal restraint (as lesser-included offenses to the second-degree kidnappings for which defendant was convicted at his first trial), and third-degree aggravated assault (as a lesser-included offense to the second-degree aggravated assault for which defendant was

convicted at his first trial). He was sentenced to an aggregate term of fifteen years' imprisonment, a portion of which was subject to the provisions of NERA, which required in part that he serve 85% of eight of those years prior to becoming eligible for parole.

Defendant appealed. He claimed, among other things, that the entirety of the prosecution's case against him consisted of Kettle's testimony. He asserted that, because Kettle "testified against him in prison attire and leg shackles in the absence of both a security hearing and an appropriate jury instruction on the issue[,]" he was denied "a constitutionally fair trial." The Appellate Division rejected that contention.[3] Referring in part to a certification filed to supplement the record on appeal, it noted that

> on February 3, 2005, Kettle was transported to the courthouse from Northern State Prison and he was brought directly to the courtroom in the morning. Kettle was transported to the courtroom in standard prison garb. . . . Kettle was brought into the courtroom and seated at the witness stand prior to the jury's arrival. No hearing was held as to his appearance, but the judge spoke to security officers and required that Kettle's hands be uncuffed, despite the officers' policy. . . . Kettle's leg shackles were left in place, and he was seated in a location where they would be less obvious to the jury.
>
> [Internal quotation marks and editing marks omitted.]

The panel explained that *Artwell, supra,* precludes "defense witnesses from appearing in physical restraints unless the trial court determines in a hearing, out of the jury's presence and for specific reasons, that the restraints are necessary to maintain the security of the courtroom." (quoting *State v. King,* 390 *N.J.Super.* 344, 363–64, 915 *A.*2d 587 (App.Div.), *certif. denied,* 190 *N.J.* 394, 921 *A.*2d 448 (2007) (internal quotation marks and editing marks omitted)). It emphasized that, "regarding a defense witness testifying while handcuffed, [*Artwell*] found that the trial court's failure to state on the record its reasons for requiring defendant's witness to appear in restraints was reversible error." (quoting

---

[3] The Appellate Division affirmed defendant's convictions and sentence. However, it remanded the case for correction of a clerical mistake: it ordered that the judgment of conviction be amended to reflect accurately the reason certain of the sentences were made to run concurrently.

*King, supra,* 390 *N.J.Super.* at 363–64, 915 *A.2d* 587 (internal quotation marks omitted)). It also noted that, under *Artwell,* "a defense witness is prohibited from testifying in 'prison garb.'" (quoting *King, supra,* 390 *N.J.Super.* at 363, 915 *A.2d* 587).

Referring to *State v. Russell,* 384 *N.J.Super.* 586, 895 *A.2d* 1163 (App.Div.2006), the panel further explained that, "[a]fter the conviction currently being appealed, [the Appellate Division had] extended the holding in *Artwell* to witnesses for the prosecution[,]" where it had ruled that, "under the circumstances of *Russell,* State's witnesses in any future hearing in that case may not testify in prison garb." The panel described "the circumstances in *Russell*" as follows:

> There, over defendant's objection that the co-conspirator's "appearance in restraints and clothing identifying him as a prisoner ... prejudiced defendant[,]" the co-conspirator "testified for the State while dressed in prison garb and while restrained both by handcuffs and leg shackles." [*Russell, supra,* 384 *N.J.Super.*] at 591–92, 895 *A.2d* 1163. No jury instructions were given ... "that [the jury] could draw no inference of defendant's guilt from [the co-conspirator's] appearance" and civilian clothes were not made available for the co-conspirator. *Id.* at 592, 895 *A.2d* 1163.

The panel then applied *Russell's* logic to the facts before it, and reasoned that

> [i]n this case, there is no showing that the co-conspirator's leg shackles were observed by the jury. Moreover, the essence of the defense was that Kettle's credibility was lacking, because he was serving a lengthy term of imprisonment and was trying to obtain a reduced sentence by inculpating someone else in the crime he committed. Defense counsel's cross-examination of Kettle demonstrates that counsel was trying to discredit Kettle based on his being in prison for the underlying crime at issue and having accepted a plea bargain. Further, in his closing statement, the defense attorney emphasized that Kettle was in prison and argued that "say[ing] the things the State needs said" was Kettle's way to get out of prison or obtain a reduced sentence regardless of the truth. Defendant was not prejudiced by Kettle's attire.

It concluded that, "[b]ased on the circumstances of this case, the fact that Kettle testified in prison garb does not require reversal."

We granted defendant's petition for certification, 195 *N.J.* 417, 949 *A.2d* 846 (2008), to consider whether *Artwell's* mandates also apply to witnesses for the prosecution, as the Appellate Division concluded in *Russell, supra,* 384 *N.J.Super.* 586, 895 *A.2d* 1163.

## II.

Defendant presents the same arguments he advanced before the Appellate Division. According to defendant, "[h]e was, at the very least, entitled to a hearing on the security issue and an appropriate jury instruction in the event that the hearing led to restraints being kept on Mr. Kettle." Quoting *Russell, supra,* 384 *N.J.Super.* at 600, 895 *A.*2d 1163, defendant asserts that "[t]his is particularly so because Mr. Kettle 'while clad in clothing clearly denoting guilt and his status as a prisoner, testified to a criminal association with the defendant. This associated guilt and prisoner status had the potential to prejudice the presumption of innocence to which the defendant was entitled.'" In a supplemental filing submitted after the limited grant of certification issued, defendant asserts that he "did not receive a fair trial." He argues that the trial court "failed to hold a security hearing which conceivably might—but most likely would not—have justified the shackling of Kettle's legs." He reasons that "[t]he record therefore does not justify the trial court's abdication of its responsibility to the courtroom security officer on the use of shackles." He further underscores that "Kettle also testified in jail garb." He concludes by claiming that "the court's failure to give a limiting instruction left the jury free to draw improper inferences based on Kettle's appearance." He thus urges that his convictions be reversed.

The State, in opposition, argues that Kettle's appearance—in prison garb and leg shackles—did not prejudice defendant. It notes, on the contrary, that "this circumstance clearly aided the defense, whose main thrust was that Kettle, a convicted, violent felon, had a strong motive to lie in order to reduce his prison sentence, and was thus unworthy of belief." It notes that the trial court had Kettle's handcuffs removed and "neutralized any potential for prejudice from [the] fact [that Kettle's legs were shackled] by having Kettle take the witness stand before the jury entered the court room, and having him remain seated during his testimony." The State also claims that "defendant waived this claim by failing to raise it below[,]" noting that "defendant's failure to

object clearly was a tactical decision because defendant chose to use to his benefit the fact that Kettle, the State's principal witness, had received a lengthy prison sentence, which he already was serving." In its supplementary, post-certification submission, the State urges that "[t]he appearance of a prosecution witness in prison garb [is] so unremarkable that not a word was said about it." It asserts, however, that "[s]hould this Court decide to apply *Artwell's* ruling to witnesses for the State, it should be on a 'going forward' basis, as in *Artwell* itself." In that instance, it further suggests the following procedural paradigm: "given the obvious tactical advantage to the defense in many cases, where it will attempt to impugn the credibility of the State's case by emphasizing the State's association with unsavory criminals, the defense must affirmatively state an objection to prison clothing, or the issue is waived."

We address first the propriety of the appearance of a prosecution witness in restraints, followed by whether, and under what circumstances, a State's witness may testify wearing prison garb.

### III.

#### A.

In *Artwell*, we emphasized that "[b]oth the state and federal constitutions guarantee defendants the right to a fair trial before an impartial jury." 177 *N.J.* at 533, 832 *A.2d* 295 (citations omitted). We explained that "[t]he fair trial right entitles a criminal defendant to have his or her guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." *Id.* at 533–34, 832 *A.2d* 295 (quoting *State v. Zhu*, 165 *N.J.* 544, 553, 761 *A.2d* 523 (2000) (internal quotation and editing marks omitted)). We reasoned that "the right to a fair trial requires that trial courts allow inherently prejudicial practices only where justified by an essential state interest specific to each trial [and that a] courtroom

arrangement is inherently prejudicial when an unacceptable risk is presented of impermissible factors coming into play." *Id.* at 534, 832 *A.2d* 295 (citations and internal quotation marks omitted).

*Artwell* made the commonsense observation that "[t]he appearance of a defense witness in restraints undermines the credibility of the testimony that witness offers on the defendant's behalf." *Id.* at 536, 832 *A.2d* 295. It reasoned that "[e]ven in those instances when the prosecution demonstrates a witness's criminal history to the jury by the entry of a conviction into evidence, that fact does not mitigate the additional harm caused by the sight of defendant's witness in restraints." *Ibid.* It noted that "[r]equiring a witness to testify in shackles also encourages the jury to perceive the defendant as one who must turn to the testimony of a putatively 'guilty' individual to help salvage his case." *Id.* at 537, 832 *A.2d* 295 (citation omitted).

For those incontrovertibly sound reasons, *Artwell* concluded that, "[b]ecause the appearance of a defense witness in restraints presents a risk of unfair prejudice to a defendant, the trial court may subject a witness to physical restraint only when it has reason to believe it is necessary to maintain the security of the courtroom." *Ibid.* (citation and internal quotation marks omitted). It required that, "[i]n that instance, the trial court should hold a hearing, however informal, and state on the record out of the jury's presence its reasons for shackling the witness, whether they are based on evidence from trial, information obtained from criminal records, or statements made by law enforcement officers." *Ibid.* (citations, internal quotation marks and editing marks omitted). It explained that, in so doing,

> [t]he trial court should consider, but is not limited to considering, the following:
>
> (1) the seriousness of the present charge, (2) the [witness]'s character, (3) the [witness]'s past record, (4) past escapes by the [witness], (5) attempted escapes by the [witness], (6) evidence the [witness] is planning an escape, (7) threats of harm to others, (8) threats to cause disturbance, (9) evidence the [witness] is bent upon self-destruction, (10) risk of mob violence, (11) risk of attempted revenge by victim's family, and (12) other offenders still at large, . . .
>
> [*Id.* at 538, 832 *A.2d* 295 (citation and editing marks omitted).]

*Artwell* further explained that, "[f]inally, the court must instruct the jury in the clearest and most emphatic terms that it give such restraint no consideration whatever in assessing the proofs and determining guilt." *Ibid.* (citation and internal quotation marks omitted).

In the context of determining whether a witness at a criminal trial should be shackled, we see no principled reason to differentiate between witnesses based on the slender reed of which party tenders them. As the Appellate Division insightfully noted in *Russell, supra,* in determining whether a witness should be restrained, distinguishing between prosecution and defense witnesses is "illusory." 384 *N.J.Super.* at 595, 895 *A.*2d 1163. Regardless of whether a witness is offered by the State or a defendant, the core question remains: is the witness a threat to courtroom security? That inquiry requires the type of "however informal" hearing *Artwell* commands, and the answer resulting from that hearing—and not the vagary of which party is the proponent of the witness—governs whether the witness is to testify under restraints.

■ That said, we underscore that a full-blown adversary hearing is not required whenever a trial court is confronted with the question of whether a witness is to testify in restraints. *Artwell* envisions, and we reaffirm, that a straightforward, candid colloquy among the court, counsel and security staff should suffice to provide an informed basis on which the trial court can exercise its discretion.

■ Our reasoning starts from the unquestioned proposition that, absent proper reasons, witnesses in criminal cases presumptively should be allowed to testify without restraints. If, from whatever source, a request for the use of restraints is made, we hold that, regardless of the identity of the proponent of a witness, trial courts have an independent obligation to gauge whether a witness is a security risk sufficient to justify the use of restraints. We further hold that, in order to exercise that discretion properly, trial courts must inquire as to the bases for the proposal and must

be satisfied that, for security concerns and in the proper exercise of judicial discretion, some level of restraints is appropriate. We also hold that such inquiry and conclusions must be spread on the record, to allow meaningful appellate review. Finally, we hold that, if the trial court in fact does order the use of restraints, the jury must be instructed "in the clearest and most emphatic terms that it give such restraint no consideration whatever in assessing the proofs and determining guilt." *Artwell, supra,* 177 *N.J.* at 538, 832 *A.*2d 295.[4]

## B.

■ We apply those principles to this case, mindful that, because defendant did not object to Kettle testifying in leg shackles, we must review defendant's contentions under the plain error standard. *See R.* 2:10–2 (noting that "[a]ny error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result"); *State v. Taffaro,* 195 *N.J.* 442, 454, 950 *A.*2d 860 (2008) (explaining that, in order for plain error to qualify as reversible, it must be " 'sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.' " (quoting *State v. Macon,* 57 *N.J.* 325, 336, 273 *A.*2d 1 (1971))). Here, Kettle, a State prisoner serving a lengthy prison term for a series of crimes of violence, was tendered as a witness for the prosecution. Outside the presence of the jury, the trial court inquired of security personnel concerning the restraints placed on Kettle. Security personnel requested that Kettle testify in both handcuffs and leg shackles. The trial court determined that Kettle's handcuffs were to be removed, but that the leg shackles would remain in place; it, however, ordered that, in order to impede the jury's sight of Kettle's leg shackles, Kettle was to be

---

[4] To that end, we refer this question to the Model Criminal Jury Charge Committee for the development and adoption of a standard charge concerning the appearance of a trial witness in restraints, consistent with the principles to which we have adverted.

placed in the jury box before the jury entered the courtroom; once his testimony was completed, he was removed from the courtroom using a restricted exit. Throughout this process, neither the State nor the defense interposed any objection or otherwise raised any concern. Tellingly, no representation has been made that any member of the jury was aware that Kettle was wearing leg shackles.

In those circumstances, we cannot conclude that the trial court abused its discretion when it allowed Kettle to testify in leg shackles that were not visible to the jury. *See State v. Torres*, 183 *N.J.* 554, 572, 874 *A.*2d 1084 (2005) (explaining that, under abuse of discretion standard, discretionary trial court determinations " 'will be reviewed only for manifest error and injustice.' " (quoting *State v. Ravenell*, 43 *N.J.* 171, 182, 203 *A.*2d 13 (1964), *cert. denied*, 379 *U.S.* 982, 85 *S.Ct.* 690, 13 *L.Ed.*2d 572 (1965))). Although admittedly sparse, the record before the trial court was sufficient to justify the limited restraints placed on Kettle. Furthermore, because Kettle's leg shackles likely were not visible to the jury, it similarly was not an abuse of discretion for the trial court to have failed to instruct the jury in respect of those restraints. On the whole, then, we affirm the Appellate Division's conclusion that defendant was not prejudiced by Kettle testifying in leg shackles.

We therefore turn to whether, and in what circumstances, a prosecution witness may testify wearing prison garb.

IV.

A.

Invoking the same fair trial right that animated its ruling concerning the use of restraints on defense witness—that is, that "the right to a fair trial requires that trial courts allow inherently prejudicial practices only where justified by an essential state interest specific to each trial" and that "[a] courtroom arrangement is inherently prejudicial when an unacceptable risk is pre-

sented of impermissible factors coming into play"—*Artwell, supra,* repeated that "[s]imilarly, the fair trial right precludes the State from requiring that a defendant appear at trial in distinctive prison garb." 177 *N.J.* at 534, 832 *A.*2d 295 (footnote, citations and internal quotation marks omitted). Distinguishing between restraints and prison garb, *Artwell* noted that "[u]nlike the use of restraints, requiring a witness to testify in prison clothing furthers no vital State interest." *Id.* at 539, 832 *A.*2d 295 (citation, internal quotation marks and editing marks omitted). For that reason, *Artwell* held that, "going forward, a trial court may not require a defendant's witness to appear at trial in prison garb." *Ibid.*

*Artwell* explained that "[a]lthough [this Court] recognize[s] the administrative inconvenience that rule might impose, the fact that it may be more convenient for prison administrators to allow defense witnesses to remain dressed in prison clothes is not an essential state interest that justifies the practice." *Ibid.* It adopted "as a general rule [that] the corrections authorities should supply defense witnesses with civilian clothing and those witnesses should enter the courtroom in such attire." *Ibid. Artwell,* however, placed the burden of notice on the defendant, requiring "that when an incarcerated witness is expected to testify on a defendant's behalf that defendant should notify the trial court and the State as soon as practicable, so that those parties may make suitable arrangements." *Ibid.*

Without resort to the logical underpinnings that require that defense witnesses not testify in prison garb, that is, that doing so "only prejudices a defendant both by undermining his or her witness's credibility and suggesting a defendant's guilt by association[,]" *ibid.,* the Appellate Division has "appl[ied] *Artwell's* holding regarding prison clothing ... to any State's witnesses[,]" and has concluded that "the requirement that a prisoner testify in prison garb, unlike restraints, can further no vital State interest." *Russell, supra,* 384 *N.J.Super.* at 598–99, 895 *A.*2d 1163 (citation omitted). That, in our view, is too narrow a focus when applied to prosecution witnesses.

No doubt, in most, if not all prosecutions where the State's case is based in whole or in part on the testimony of witnesses already incarcerated, the defense will seek to exploit that fact as impugning the witness's credibility. In fact, that is precisely the bearing defendant steered here: from the outset, defendant highlighted Kettle's status as a State prisoner in support of defendant's contention that Kettle should not be believed. In those circumstances, the considerations we seek to avoid from the wearing of prison attire simply are absent. Therefore, as a matter of law or constitutional doctrine, we cannot accept the Appellate Division's conclusion in *Russell* that a witness can never testify in prison garb. *Id.* at 598, 895 *A.*2d 1163.

■ Although we find the broad proscription on prison garb embraced by the Appellate Division in *Russell* to be overbroad, we are sympathetic to the results the Appellate Division sought to achieve. We are mindful that, "when we perceive, as we do here, that more might be done to advance the reliability of our criminal justice system, our supervisory authority over the criminal courts enables us constitutionally to act." *State v. Romero*, 191 *N.J.* 59, 74–75, 922 *A.*2d 693 (2007). We therefore exercise our supervisory powers pursuant to Article VI, Section 2, Paragraph 3 of our constitution [5] to impose a level playing field: that, "as a general rule, the corrections authorities should supply defense [and prosecution] witnesses with civilian clothing and those witnesses should

---

[5] *N.J. Const.* art. VI, § 2, ¶ 3 ("The Supreme Court shall make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts."). *See, e.g., State v. Delgado*, 188 *N.J.* 48, 63, 902 *A.*2d 888 (2006) (applying supervisory powers "to require that, as a condition to the admissibility of an out-of-court identification, law enforcement officers make a written record detailing the out-of-court identification procedure, including the place where the procedure was conducted, the dialogue between the witness and the interlocutor, and the results"); *State v. Cook*, 179 *N.J.* 533, 562, 847 *A.*2d 530 (2004) (establishing committee to study and make recommendations on use of electronic recordation of custodial interrogations and, ultimately, exercising supervisory powers to adopt recordation requirements).

enter the courtroom in such attire." *Artwell, supra,* 177 *N.J.* at 539, 832 *A.*2d 295.

 *Artwell* acknowledges that, in respect of defense witnesses, there may be exceptions to that general rule, an acknowledgment we also embrace in respect of witnesses tendered by the State.[6] For example, in some instances it may not be practical to provide wardrobe changes to prison inmates; or a particular inmate may present an extraordinary risk of flight or danger; or an inmate may refuse to wear a change of clothing. In those and other instances, the prosecution should request relaxation of the presumptive rule and articulate a basis for the exception sought. Trial courts should assess the reason proffered and, in exercising their sound discretion, make a determination in the individual case, and place their reasons on the record. If the trial court allows a prosecution witness to testify in prison garb, the trial court must instruct the jury that the witness's attire should play no role in the jury's primary determination of weighing the evidence and determining the defendant's guilt.[7] Finally, whether a witness testifies wearing prison garb will be subject to review under the abuse of discretion standard and will be gauged as whether it constitutes harmless error, that is, whether the error " 'is of such a nature as to have been clearly capable of producing an unjust result.' " *State v. Castagna,* 187 *N.J.* 293, 312, 901 *A.*2d 363 (2006) (quoting *R.* 2:10–2; editing marks omitted); *see also State v. Ingram,* 196 *N.J.* 23, 49, 951 *A.*2d 1000 (2008) (explaining that " 'the harmless error standard thus requires that there be some degree of possibility that the error led to an unjust result. The possibility must be real, one sufficient to raise a reasonable doubt as to whether it led the jury to a verdict it otherwise might

---

[6] Nothing in this opinion should be read to limit a defendant's right to waive the rights afforded to the defendant either under *Artwell* or hereunder.

[7] Consistent with our reference in respect of witnesses testifying in restraints, we refer the question of trial witnesses appearing in prison garb to the Model Criminal Jury Charge Committee for the development and adoption of a model charge in conformity with the principles we have set forth.

not have reached.' " (quoting *State v. R.B.*, 183 *N.J.* 308, 330, 873 *A.*2d 511 (2005) (internal quotation marks and editing marks omitted))).

## B.

Those principles, when applied to this case, clearly command that defendant's convictions and sentence must be affirmed. Here, defendant did not object to Kettle's appearance in prison garb; on the contrary, defendant sought to capitalize on it and what it represented. And, defendant made no showing whatsoever that the trial court abused its discretion in allowing Kettle to testify wearing prison garb or that defendant otherwise was prejudiced thereby. In those circumstances, any error that might have arisen as a result of allowing Kettle to testify in prison garb clearly was harmless.

## V.

As modified, the judgment of the Appellate Division is affirmed.

*For affirmance as modified*–Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.