# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3188-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

E.R.-L.,

    Defendant-Appellant.

_____

Submitted November 16, 2020 – Decided December 2, 2021

Before Judges Currier, Gooden Brown and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 17-09-0638.

Joseph E. Krakora, Public Defender, attorney for appellant (Alison Gifford, Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Steven Cuttonaro, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Defendant E.R.-L.[1] appeals his conviction after a jury trial of two crimes relating to the sexual abuse of his minor stepdaughter, as well as from the subsequently imposed ten-year sentence. We affirm.

I.

Anna was eight and nine years old when she lived with defendant and her mother, who were married. Anna was close to defendant in his role as her stepfather. The three lived together in Union County. In 2016, they moved to Hudson County.

In 2017, after a medical examination revealed an infection in her genital area, Anna told a detective that defendant sexually abused her. Anna's interview was recorded. When later questioned by a detective, defendant admitted to committing various acts of sexual abuse on Anna at the family's Union County home and their Hudson County home. He admitted that the sexual abuse escalated in severity after the family moved to Hudson County. Defendant's statement also was recorded.

A Hudson County grand jury indicted defendant, charging him with: (1) first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a); (2) second-degree

---

[1] We identify defendant by his initials and adopt a pseudonym for the victim to protect her identity. R. 1:38-3(c)(9).

sexual assault, N.J.S.A. 2C:14-2(b); (3) second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1); and (4) fourth-degree diseased person committing an act of sexual penetration, N.J.S.A. 2C:34-5(a).[2] Each of the charges in the indictment relate only to the alleged sexual abuse by defendant in Hudson County.

The parties made several pretrial motions. The trial court concluded that defendant made a knowing, intelligent, and voluntary waiver of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and that his recorded statement was admissible. In addition, the court held that Anna's recorded interview was admissible under N.J.R.E. 803(c)(27), the tender years exception to the hearsay rule. The court also granted the State's application to allow Anna to testify at trial by closed circuit television (CCTV) pursuant to N.J.S.A. 2A:84A-32.4 (allowing CCTV testimony at trial "if the court determines by clear and convincing evidence that there is a substantial likelihood that the victim or witness would suffer severe emotional or mental distress if required to testify in the presence of spectators, the defendant, the jury, or all of them."). Defendant

---

[2] The fourth count of the indictment was dismissed prior to trial.

A-3188-18

did not move before trial to bar the admission of evidence of his sexual abuse of Anna in Union County.

In her opening statement, the assistant prosecutor referred to defendant's recorded statement, noting that the jury will hear defendant admit to sexually abusing Anna and concede that "it started when they were living as a family in [Union County] and that it continued when they moved to [Hudson County]." The assistant prosecutor continued:

> You'll hear him explain that when they were in [Union County], he only touched her . . . vagina over the clothes . . . that's as far as it went.
>
> . . . .
>
> And, you'll hear him explain that "I've always tried to truthfully when the curiosity came, what I did was move her away from me." But, when they moved to [Hudson County], this defendant went even further than just touching her vagina. And, as he put it – this is what he says, "[t]he curiosity took me too far."

Defendant's counsel did not object to these statements.

At trial, Anna's recorded interview and defendant's recorded statement were admitted as evidence. In addition, Anna, then ten-years old, testified via CCTV from the judge's chambers. Defendant, the judge, and the jury were able to see and hear Anna, but she could not see defendant or the courtroom. Anna recounted defendant's sexual abuse. She was not asked to specify the location

4

at which the sexual abuse took place, but described acts consistent with the sexual abuse defendant admitted in Hudson County.

Defendant also testified. He denied having sexually abused Anna and said he falsely implicated himself when questioned by the detective because he was unemployed and mistakenly believed the government would financially support his family if he were incarcerated. Defendant's recorded interview included these and similar statements he made out loud to himself in the empty room when the detective was not present:

> What did I do? God my god everything is a lie my God please God. . . . Everything is a lie but if [Anna] said it I have to say it. . . . Forgive me for all my sins, forgive me. I know I am guilty.
>
> . . . .
>
> I cannot stand this poverty anymore. . . . Could it be that I will be better in there in jail or worse? I don't care. That they give my wife all the help, the government, since I am not going to be there . . . .
>
> . . . .
>
> I am a monster, because of what I said, I am a monster . . . you would know that is best God. They mistreated [Anna] so that she would say that, you know what is best.
>
> . . . .

A-3188-18

> Please God, you know I am doing right, that they give her all the help so she can have her children, let them give her all the help, from the government please. I cannot give her anything. . . . She will be better like this my wife without me I am a nuisance to her.
>
> . . . .
>
> I am declaring myself guilty, guilty, guilty, I am guilty, I am guilty God.
>
> . . . .
>
> My sister told me [Anna] can lie, can lie, lie a lot, but alright God, I said what I said. They have to believe me, alright.
>
> . . . .
>
> It is the best thing God . . . to declare myself guilty so that my family is better . . . you are going to help them.

With respect to the consistency in the details of his confession with Anna's statement, defendant testified that before he was questioned, he spoke with his wife about Anna's sexual abuse allegations. He testified that when questioned by the detective he "followed along with" what his wife had told him and "heightened what [he] said to make it more credible."

During her closing statement, the assistant prosecutor again commented on defendant's recorded statement. She told the jury:

> You heard [defendant] admit that he touched [Anna's] vagina with his hands on several occasions. . . . That

A-3188-18

it began when they started living as a family in [Union County] and that it continued when they moved to [Hudson County]. And he explained it got worse, that he was no longer able to control the urges and that when they moved to [Hudson County], he admitted to it getting worse. . . . What you heard from defendant's mouth was specific and unique details that he could only know if he was there and it really happened. Some of these details he told you about was that he said it started in [Union County].

Defendant's counsel did not object to these comments.

In its initial and final jury charges, the trial court delivered the model charge on the general credibility of witnesses. The court gave the following instruction regarding defendant's recorded statement:

There is, for your consideration in this case, a recorded statement . . . made by the defendant . . . . It is your function to determine whether any portion of [defendant's] statement is credible. You may consider all the circumstances surrounding the statement in making that determination . . . .

The court gave no instructions regarding Anna's recorded statement or her testimony by CCTV. Defendant did not object to the jury instructions.

The jury found defendant guilty of second-degree sexual assault and second-degree endangering the welfare of a child and acquitted him of first-degree aggravated sexual assault.

A-3188-18

At sentencing, the judge found aggravating factor two, N.J.S.A. 2C:44-1(a)(2) ("[t]he gravity and seriousness of harm inflicted on the victim, including whether or not the defendant knew or reasonably should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to advanced age, ill-health, or extreme youth, or was for any other reason substantially incapable of exercising normal physical or mental power of resistance . . . ."). In support of this aggravating factor, the court noted the "vulnerability of the victim" and found that Anna was "nine years old at the time. And there was the trust and love between the child and her stepfather." In addition, the court found aggravating factor nine, N.J.S.A. 2C:44-1(a)(9) ("[t]he need for deterring the defendant and others from violating the law . . . ."). The court "weigh[ed] that [factor] heavily." The court also found mitigating factor seven, N.J.S.A. 2C:44-1(b)(7) ("[t]he defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense . . . .").

Being "clearly convinced that the aggravating factor[s] substantially outweigh the mitigating factor[,]" the court sentenced defendant: (1) on his conviction for second-degree sexual assault to a ten-year term of imprisonment, with an eighty-five percent period of parole ineligibility pursuant to the No Early

Release Act, N.J.S.A. 2C:43-7.2; and (2) on his conviction for second-degree endangering the welfare of a child to a seven-year term of imprisonment. The court ordered the two sentences be served concurrently.

This appeal followed. Defendant raises the following arguments.

POINT I

DEFENDANT WAS DEPRIVED OF DUE PROCESS AND A FAIR TRIAL BY THE ADMISSION OF UNCHARGED ACTS OF SEXUAL ABUSE. (Not Raised Below).

A. N.J.R.E. 404(b) Mandated Exclusion of the Uncharged Criminal Conduct Because It Served Only as Unlawful Propensity Evidence.

B. Evidence of Defendant's Conduct in [Union County] is Not Admissible as "Intrinsic Evidence."

C. Even If Admissible, the Trial Court's Failure to Give A Limiting Instruction Denied [Defendant] a Fair Trial.

POINT II

THE INADEQUATE JURY INSTRUCTIONS REGARDING THE CCTV TESTIMONY AND THE PRE-TRIAL STATEMENTS REQUIRE REVERSAL OF THE CONVICTIONS. (Not Raised Below).

A. The Use of CCTV Testimony Without a Cautionary Instruction Deprived Defendant of a Fair Trial.

A-3188-18

B.     The Jury Instruction on Defendant's Pre-Trial Statement Was Inadequate Because It Failed to Inform the Jury to Disregard Any Portion of the Statement Found Not to be Credible.

C.     The Court Provided Inadequate Guidance to The Jury on How to Evaluate [Anna's] Pre-Trial Statement.

POINT III

THE CUMULATIVE IMPACT OF THE ERRORS DENIED DEFENDANT A FAIR TRIAL. (Not Raised Below).

POINT IV

IF THE CONVICTIONS ARE NOT REVERSED, THE MATTER MUST BE REMANDED FOR A RESENTENCING BECAUSE THE COURT ENGAGED IN IMPERMISSIBLE DOUBLE COUNTING.

II.

Because defendant did not object to the admission of the evidence concerning his alleged sexual abuse of Anna in Union County, we review the record under the plain error standard for an error "clearly capable of producing an unjust result . . . ." State v. Whitaker, 200 N.J. 444, 465 (2009) (quoting R. 2:10-2). "Not any possibility of an unjust result will suffice as plain error, only 'one sufficient to raise a reasonable doubt as to whether the error led the jury to

10

a result it otherwise might not have reached.'" State v. Coclough, 459 N.J. Super. 45, 51 (App. Div. 2019) (quoting State v. Macon, 57 N.J. 325, 336 (1971)).

Even where an objection has been raised, we review a trial court's evidentiary rulings with deference. State v. Hyman, 451 N.J. Super. 429, 441 (App. Div. 2017). "[T]he decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010). An abuse of discretion is found only when the court has made a "clear error of judgment." State v. Koedatich, 112 N.J. 225, 313 (1988). The court's evidentiary decision should be sustained unless it resulted in a "manifest denial of justice." State v. Perry, 225 N.J. 222, 233 (2016) (quoting State v. Marrero, 148 N.J. 469, 484 (1997)).

Because defendant failed to raise the issue before the trial court, our review is hampered by the fact that the State and defendant did not have an opportunity to create a full record tailored to the relevant precedents regarding admission of evidence relating to prior acts and appropriate limiting instructions. We are, therefore, constrained to analyze defendant's arguments against the sparse record.

N.J.R.E. 404(b) provides, in relevant part, as follows:

11

(b)     Other Crimes, Wrongs, or Acts.

(1)     Prohibited Uses.  Except as otherwise provided by Rule 608(b),[3] evidence of other crimes, wrongs, or acts is not admissible to prove a person's disposition in order to show that on a particular occasion the person acted in conformity with such disposition.

(2)     Permitted Uses.  This evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.

The Supreme Court established four factors to be weighed when deciding if other crimes evidence is admissible under N.J.R.E. 404(b):

1.     The evidence of the other crime must be admissible as relevant to a material issue;

2.     It must be similar in kind and reasonably close in time to the offense charged;

3.     The evidence of the other crime must be clear and convincing; and

4.     The probative value of the evidence must not be outweighed by its apparent prejudice.

[State v. Cofield, 127 N.J. 328, 338 (1992).]

"Because evidence of a defendant's previous misconduct 'has a unique tendency' to prejudice a jury, it must be admitted with caution."  State v. Willis, 225 N.J.

---

[3]  Rule 608(b) is not applicable here.

85, 97 (2016) (quoting State v. Reddish, 181 N.J. 553, 608 (2004)). "Prior-conduct evidence has the effect of suggesting to a jury that a defendant has a propensity to commit crimes, and, therefore, that it is 'more probable that he committed the crime for which he is on trial.'" Id. at 97 (quoting State v. Weeks, 107 N.J. 396, 406 (1987)).

We reject the State's argument that the Union County sexual assaults were intrinsic to the Hudson County offenses and, as a result, not subject to Rule 404(b). See State v. Rose, 206 N.J. 141 (2011). The Union County sexual assaults do not directly prove, were not performed contemporaneously with, and did not facilitate the charged offenses. Id. at 180. While part of an escalating pattern of behavior with the same victim, the Union County sexual assaults were not elements of the sexual assaults that formed the basis of the counts of the indictment. That evidence was, therefore, prior-conduct evidence.

We agree that admission of evidence of the Union County sexual assaults was error. In reaching this conclusion, we are guided by the holding in State v. J.M., Jr., 225 N.J. 146 (2016). In that case, the defendant was a massage therapist charged with sexually assaulting a client while giving her a massage. Id. at 150. The defendant denied any sexual contact with the victim during the massage. Id. at 153.

Prior to trial, the State moved to admit evidence that the defendant had committed a similar sexual assault against a female client years earlier while working as a massage therapist in Florida. Ibid. The Florida incident resulted in criminal charges of which the defendant was acquitted by a jury. Ibid. After conducting a hearing at which the Florida client testified, the trial court admitted the evidence of the Florida sexual assault under Rule 404(b), as relevant to motive, intent, plan, and/or absence of mistake. Id. at 154.

On leave to appeal, the Supreme Court reversed. The Court held that "[i]n a case in which a defendant contends the alleged assault did not occur, intent and absence of mistake are not at issue. In the absence of a genuinely contested fact, other-crime evidence is irrelevant and the first Cofield prong cannot be satisfied." Id. at 159 (footnote omitted). The Court explained that when a "[d]efendant does not argue that the alleged sexual assault . . . was consensual or accidental[,]" evidence of a prior alleged sexual assault "is inadmissible to establish motive, intent, or absence of mistake because defendant's state of mind is not a 'genuinely contested' issue in the case." Id. at 160 (quoting Willis, 225 N.J. at 98); compare State v. Oliver, 133 N.J. 141, 155 (1993) (holding that when a defendant claims sexual acts that are the subject of a charged offense were

consensual, he puts his state of mind at issue, opening the door to the admission of evidence of previous conduct).

Nor, the Court explained, was the prior-conduct evidence admissible "for proof of plan, because it is insufficient to 'establish the existence of a larger continuing plan of which the crime on trial is a part[.]'" Id. at 160 (quoting State v. Stevens, 115 N.J. 289, 306 (1989) (alterations in original)). "A 'strong factual similarity' between the two sexual assaults is not enough to reveal a plan." Id. at 160 (quoting Stevens, 115 N.J. at 305). Finally, the Court found that the probative value of the evidence of the Florida sexual assault was outweighed by its potential for undue prejudice – "namely, the jury's inevitable assumption that defendant has a propensity to engage in such conduct . . . ." Id. at 161.

We recognize that the facts in the present appeal differ from those before the Court in J.M., Jr. The prior conduct in J.M., Jr. involved a sexual assault against a different victim than in the charged offense. In addition, the prior conduct was remote in time and place from the charged conduct. Here, the uncharged Union County sexual assaults were against the same victim and immediately preceded the charged conduct, which took place after the family moved to a neighboring county. We do not view these distinctions as sufficient to depart from the holding in J.M., Jr., which was based on the absence of a

A-3188-18

contested issue about which the previous conduct was relevant when, as is the case here, the defendant denied the sexual conduct that was the basis of the charged offense.

We note too that the defendant in J.M., Jr. consistently denied having sexually assaulted the victim. Defendant, on the other hand, made a detailed recorded confession admitting to both the sexual assaults on which the charges were based and the uncharged Union County sexual assaults. By the time of trial, however, defendant had recanted his confession and denied having engaged in any sexual contact with Anna. Despite his prior confession, defendant was, at least for the purposes of the admissibility of evidence of prior conduct, in the same posture as the defendant in J.M., Jr. at the time that evidence of the Union County sexual assaults was presented to the jury.

Having carefully reviewed the record, however, we conclude that admission of the evidence of the Union County sexual assaults was not clearly capable of producing an unjust result. The jury was presented with the task of deciding which of two versions of events was more credible: Anna's testimony that defendant sexually assaulted her in Hudson County, which was consistent with her recorded statement to a detective, or defendant's denial of having engaged in any sexual activity with Anna, which was contradicted by his

16

recorded confession to having sexually assaulted her in both Union County and Hudson County. The fact defendant admitted and subsequently recanted the Union County sexual assaults does not tend to make either witness's testimony regarding the Hudson County sexual assaults more or less credible. Either the jury believed Anna's account of defendant's sexual assaults in Hudson County or defendant's recantation of his confession to having sexually assaulted with his stepdaughter in both Union County and Hudson County.

The Union County sexual assaults were part and parcel of defendant's confession in which he identified his growing "curiosity" as the motivation for the sexual assaults. The Union County allegations did not have the tendency to suggest a propensity on defendant's part to sexually abuse Anna, given that they did not concern sexual assaults against a different victim or against Anna but remote in time and place from the charged conduct. We are not convinced that the evidence of the Union County sexual assaults was sufficient to raise a reasonable doubt that the jury reached a result that it might not have otherwise reached had it heard evidence only of the Hudson County sexual assaults.

## III.

It is well-settled that "[a]ccurate and understandable jury instructions in criminal cases are essential to a defendant's right to a fair trial." State v.

<u>Concepcion</u>, 111 N.J. 373, 379 (1988). However, "[i]f the defendant does not object to the charge at the time it is given, there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case." <u>State v. Singleton</u>, 211 N.J. 157, 182 (2012). Therefore, "the failure to object to a jury instruction requires review under the plain error standard." <u>State v. Wakefield</u>, 190 N.J. 397, 473 (2007).

> As applied to a jury instruction, plain error requires demonstration of "legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result."
>
> [<u>State v. Chapland</u>, 187 N.J. 275, 289 (2006) (quoting <u>State v. Hock</u>, 54 N.J. 526, 538 (1969)).]

The mere possibility of an unjust result is not enough to warrant reversal of a conviction. <u>State v. Jordan</u>, 147 N.J. 409, 422 (1997). "The error must be considered in light of the entire charge and must be evaluated in light 'of the overall strength of the State's case.'" <u>State v. Walker</u>, 203 N.J. 73, 90 (2010) (quoting <u>Chapland</u>, 187 N.J. at 289).

"[W]e must read the charge as a whole." <u>State v. Townsend</u>, 186 N.J. 473, 499 (2006). "[T]he prejudicial effect of an omitted instruction must be evaluated in light of the totality of the circumstances including all the instructions to the

18

jury, [and] the arguments of counsel." Ibid. (alteration in original) (quoting State v. Marshall, 123 N.J. 1, 145 (1991)). A defendant is entitled to a charge that is "accurate and that does not, on the whole, contain prejudicial error." State v. LaBrutto, 114 N.J. 187, 204 (1989). "The test to be applied . . . is whether the charge as a whole is misleading, or sets forth accurately and fairly the controlling principles of law." State v. Baum, 224 N.J. 147, 159 (2016) (quoting State v. Jackmon, 305 N.J. Super. 274, 299 (App. Div. 1997)).

In J.M., Jr., the Court held that when prior-conduct evidence is admitted at trial "and before the trial court instructs the jury on the limited and specific purpose for which the evidence has been admitted, the court must" instruct the jury as follows:

> Normally, such evidence is not permitted under our rules of evidence. Our rules specifically exclude evidence that a defendant has committed other crimes, wrongs or acts when it is offered to show that he/she has a disposition or tendency to do wrong and therefore must be guilty of the charged offenses. Before you can give any weight to this evidence, you must be satisfied that the defendant committed the other [crime, wrong, or act]. If you are not so satisfied, you may not consider it for any purpose.
>
> [J.M., Jr., 255 N.J. at 159 (alteration in original) (quoting Model Jury Charge (Criminal), "Proof of Other Crimes, Wrongs, or Acts (N.J.R.E. 404(b))" (June 4, 2007)).]

Because the admissibility of the Union County sexual assault allegations was not raised by defendant, the trial court did not issue the limiting instruction required by J.M., Jr.  We conclude, however, that in light of the general jury instructions with respect to the jury's duty to determine the credibility of witnesses, and for the reasons discussed above with respect to why admission of the evidence of the Union County sexual assaults did not constitute plain error, we conclude that the absence of the J.M., Jr. jury instruction does not warrant reversal.

Defendant also argues that having Anna testify by CCTV was inherently prejudicial to him because it created the inference that she would have been traumatized if required to be in the same room as defendant.  He further contends that the manner in which the testimony was delivered bolstered Anna's credibility and suggested his guilt.  Defendant argues that it was error for the trial court not to address these circumstances by instructing the jury not to consider the method by which Anna's testimony was presented when determining her credibility.

There is no model jury charge regarding testimony delivered by CCTV. In addition, as noted above, defendant did not request instructions regarding the method of delivery of Anna's testimony.  In support of his argument, defendant

relies on precedents prohibiting a court from requiring a defendant or a witness: (1) to appear before the jury in restraints absent compelling reasons, see State v. Artwell, 177 N.J. 526, 537 (2003); State v. Damon, 286 N.J. Super. 492, 498-99 (App. Div. 1996); and (2) in prison uniforms, see State v. Kuchera, 198 N.J. 482, 500-01 (2009).

We find these precedents unpersuasive. Unlike appearing in prison garb, testifying via CCTV is not inherently suggestive of the guilt or untrustworthiness of the defendant. Jurors were not told the reasons why the trial court permitted Anna to testify remotely. Given the pervasiveness of remote communications in society generally, the jury may well have assumed that the practice is routine. Jurors may also have inferred that it would have been traumatic for a ten-year-old to testify before a courtroom full of strangers about the acts of sexual abuse she suffered. Nor do we view this arrangement as inherently suggestive of Anna's credibility. There is nothing about testifying remotely that suggests the victim is more likely to be truthful than if she had appeared in person.

Nor are we persuaded by defendant's argument regarding the jury instructions addressing witness credibility. Defendant argues that the trial court erred by not giving the jury a Hampton charge. See State v. Hampton, 61 N.J.

21

250 (1972). That is, when evidence is admitted in the form of a defendant's out-of-court statement, the "jury shall be instructed that they should decide whether in view of all the . . . circumstances the defendant's confession is true." Id. at 272. In addition, jurors must be instructed that if they find the defendant's statement incredible, "then they must treat it as inadmissible and disregard it for purposes of discharging their function as fact finders on the ultimate issue of guilt or innocence." Ibid.[4]

The State concedes that the court failed to give a Hampton instruction. It notes, however, that defendant did not request the instruction. We have previously found no plain error existed in the absence of a Hampton charge where the trial court "clearly and repeatedly instructed the jury that it was to consider the credibility of all of the testimony which included the testimony as to defendant's statement . . . ." State v. Setzer, 268 N.J. Super. 553, 565 (App. Div. 1993). The court gave a similar charge here.

In addition, we have held that where a defendant has given two conflicting statements, a Hampton charge is not necessary. State v. Jordon, 285 N.J. Super. 589, 596-98 (App. Div. 1995). In Jordan, the defendant did not deny that he killed the victim. Id. at 595. His proffered defense was that the shooting was

_____

[4] The holding in Hampton was codified in N.J.R.E. 104(c)(2).

the accidental result of a struggle. That assertion was clearly set forth in a recorded statement. Ibid. His prior oral statement, however, indicated that he intentionally fired at the victim. Both statements were submitted to the jury. Ibid. We held that a Hampton charge was not necessary because "[t]he jury had to know and understand that they would have to decide which of these versions was credible." Ibid.

Here, the jury was presented with defendant's recorded out-of-court confession and his trial testimony denying the sexual assaults and purporting to explain the admissions as falsely given to secure financial assistance for his family. The jury, having been instructed generally on its obligation to make credibility determinations, clearly knew and understood that they would have to decide which of defendant's version of events was credible. It was presented with the stark choice of deciding whether defendant truthfully confessed to sexually abusing Anna or falsely implicated himself in the hope of assisting his family financially. In these circumstances, we conclude that the absence of a Hampton charge did not constitute plain error.

We reach a similar conclusion with respect to defendant's arguments regarding an absence of instruction addressing the tender years exception to the hearsay rule. There are no model instructions with respect to the exception. In

23

addition, defendant did not ask for instructions specifically addressing Anna's statement to the detective. Before us, defendant argues that it was plain error for the court not to instruct the jury to consider Anna's age, demeanor, background, and relationship to the detective and defendant, as well as the voluntariness of her accusations, when assessing the credibility of her out-of-court statement. We find no support for defendant's argument in relevant legal precedents and conclude that the general jury instructions on credibility sufficiently apprised the jury of its obligation to determine whether Anna's allegations of sexual abuse were credible.

Finally, we disagree with defendant's argument that the errors he raised, if insufficient individually to invalidate his conviction, had a cumulative effect warranting reversal. Our careful review of the record reveals that defendant was afforded a fair trial. See Wakefield, 190 N.J. at 537 (holding that "a defendant is entitled to a fair trial but not a perfect one.") (quoting State v. R.B., 183 N.J. 308, 333-34 (2005)). He was unhindered in his presentation to the jury of his recantation of his confession and denial of sexually abusing Anna. He also had an opportunity to challenge the credibility of Anna's out-of-court statement and trial testimony. The jury was adequately instructed with respect to its obligation

to determine whether the State proved beyond a reasonable doubt that Anna's allegations were true.

IV.

We review defendant's sentence for abuse of discretion.  State v. Pierce, 188 N.J. 155, 166 (2006).  We must affirm a sentence "unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) 'the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience.'"  State v. Fuentes, 217 N.J. 57, 70 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

The sentencing court must examine the aggravating and mitigating factors enumerated in N.J.S.A. 2C:44-1(a) and (b).  Id. at 72.  Each factor found by the court must be relevant and supported by "competent, reasonably credible evidence."  Ibid. (quoting Roth, 95 N.J. at 363).  The court then must conduct a qualitative balancing of the factors to determine the appropriate sentence.  Id. at 72-73.  One "reasonable" approach is for the court to begin its analysis in the middle range for the offense at issue and determine whether the factors justify

departure above or below the middle range.  Id. at 73 (quoting State v. Natale, 184 N.J. 458, 488 (2005)).

"Elements of a crime, including those that establish its grade, may not be used as aggravating factors for sentencing of that particular crime."  State v. Lawless, 214 N.J. 594, 608 (2013).  To use those elements in formulating the aggravating factors would result in impermissible double-counting.  State v. Kromphold, 162 N.J. 345, 353 (2000) (citing State v. Yarbough, 100 N.J. 627, 633 (1985)); see also Fuentes, 217 N.J. at 74-75 (holding that sentencing courts "must scrupulously avoid 'double-counting' facts that establish the elements of the relevant offense.").

"A court, however, does not engage in double-counting when it considers facts showing defendant did more than the minimum the State is required to prove to establish the elements of an offense."  State v. A.T.C., 454 N.J. Super. 235, 254-55 (App. Div. 2018) (citing Fuentes, 217 N.J. at 75).

> In [Yarbough], we recognized that facts that established elements of a crime for which a defendant is being sentenced should not be considered as aggravating circumstances in determining that sentence.  We reasoned that the Legislature had already considered the elements of an offense in the gradation of a crime. If we held otherwise, every offense arguably would implicate aggravating factors merely by its commission, thereby eroding the basis for the gradation of offenses and the distinction between elements and

aggravating circumstances. In the same manner, double-counting of elements of the offenses as aggravating factors would be likely to interfere with the Code's dedication to uniformity in sentencing.

[Kromphold, 162 N.J. at 353 (internal citation omitted).]

Defendant argues that he is entitled to a new sentencing hearing because the trial court erred when it found aggravating factor two based on Anna's age, given that the victim's age is an element of both crimes of which defendant was convicted. In addition, defendant argues that the trial court erred when it relied on the relationship between defendant and Anna in support of aggravating factor two because defendant's legal duty to Anna is an element of the endangering offense. We are not persuaded by defendant's arguments.

The second-degree sexual assault of which defendant was convicted is defined as follows: "[a]n actor is guilty of sexual assault if the actor commits an act of sexual contact with a victim who is less than 13 years old and the actor is at least four years older than the victim." N.J.S.A. 2C:14-2(b). In addition, second-degree endangering the welfare of a child is defined as follows:

Any person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who engages in sexual conduct which would impair or debauch the morals of the child is guilty of a crime of the second degree.

[N.J.S.A. 2C:24-4(a)(1).]

"Child" is defined for purposes of the statute as "any person under 18 years of age." N.J.S.A. 2C:24-4(b)(1).

We agree that the victim's age is an element of both crimes of which defendant was convicted. However, the trial court's findings with respect to aggravating factor two focused on Anna's familial relationship to defendant and the trust and love that existed between the two, the breach of which made Anna particularly vulnerable. The familial relationship between Anna and defendant is not an element of N.J.S.A. 2C:14-2(b). It is, instead, a fact beyond the minimum the State needed to prove the offense. A.T.C., 454 N.J. Super. at 254-55. In addition, aggravating factor two "focuses on the setting of the offense itself with particular attention to any factors that rendered the victim vulnerable or incapable of resistance at the time of the crime." Lawless, 214 N.J. at 611. The record reflects that Anna expressed a reluctance to testify at trial because she did not want defendant to be imprisoned, supporting the trial court's finding that she was vulnerable to defendant's sexual abuse because of the emotional bond between them.

In addition, although defendant's legal duty to care for Anna is an element of N.J.S.A. 2C:24-4(a)(1), the trust established between Anna and defendant, of

which defendant took advantage, is an additional aggravating circumstance warranting application of aggravating factor two. The legal duty of a stepfather alone is sufficient to prove the offense. The emotional bond between defendant and Anna, which facilitated the commission of his crimes, is a sufficient basis to support aggravating factor two.

Finally, the sentence imposed on defendant is within the statutory range for his offenses and does not shock the conscience of this court. Defendant repeatedly sexually abused a nine-year-old girl and violated the bond that existed with his stepdaughter. We see no reason to disturb the sentence imposed.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3188-18